CHARLES W. SAUNDERS *vs.* HENRY E. WHITCOMB.

Worcester.    November 20, 1900. — January 4, 1901.

Present: HOLMES, C. J., KNOWLTON, BARKER, HAMMOND, & LORING, JJ.

A bill of exchange payable in London in pounds sterling was dishonored, and was sent to a bank at the residence in Massachusetts of one of the two acceptors for collection, where a payment of one half the face of the bill was made in dollars, on an agreement of the bank that the payment should be accepted in liquidation of that acceptor's proportion of the debt. In an action against the same acceptor to recover the balance of the debt it was *held,* that the bank was a mere collec-

tion agent, and in the absence of express authority could not release any portion of the debt; that the acceptance of the part payment in dollars instead of pounds sterling was not an advantage to the owner of the bill nor a detriment to the acceptor, nor was it such an advantage or detriment that the payment was made in Massachusetts, as it did not appear that the acceptor had made any provision to place funds in London, and moreover the bill being dishonored the acceptor was bound to pay it wherever presented, and that there was no accord and satisfaction, and the acceptance of the part payment by the owner of the bill was no bar to his action for the balance of the debt.

Whether a part payment of a debt by a stranger is a good consideration for an oral release of the whole debt, *quære.*

CONTRACT on three bills of exchange for £40, £50, and £85 respectively, all drawn upon the defendant and one Cushman, two by one Terry, and the third by Williams and Strahan, and accepted by the defendant and Cushman. Writ dated January 6, 1899.

The defendant in his answer, among other matters, alleged that there had been a payment at Worcester, Massachusetts, of a sum less than the face of the bills of exchange, upon the express agreement that the sum paid should be accepted in full satisfaction and discharge of the obligation, and further, that there had been full accord and satisfaction of the bills of exchange by the payment by one G. Henry Whitcomb, the defendant's father, of a sum less than the entire amount thereof.

At the trial in the Superior Court, before *Gaskill*, J., it was admitted that the bills were open to all defences that existed between the original parties. It appeared that they were drawn and accepted in England; that in the summer of 1894 the defendant and Cushman arranged for a trip of the Amherst College Glee Club through England, and made a contract with Terry by which he agreed to " engage transportation, lodging and other hotel accommodations, entertainment halls and secure printing of posters and all other necessary printing, and the programmes, to arrange for bill-posting in each town and all newspapers advertisements." Williams and Strahan, the drawers of the third bill of exchange for £85, were employed by Terry to print programmes and advertising matter for the tour of the Amherst College Glee Club in England.

A partner of the firm of Williams and Strahan testified, that at the close of the tour, and after the work was done, Terry, the defendant, and Cushman came to the office of Williams and

Strahan, where the £85 bill of exchange was made out and accepted ; that one half of this bill of exchange had since been paid through Brown, Shipley, and Company, with whom as collection agents the drafts had been left; that when the drafts were returned from Brown, Shipley, and Company in November of 1894 Terry informed Williams and Strahan that one half of them had been paid, and that there was no agreement at any time by his firm that the defendant was liable for one half only of said account or one half of said bill of exchange. That his firm did not accept the payment of one half the bill in full discharge of the defendant's liability thereon nor agree to so accept it, nor authorize any one to do so, whether the payment was made by the defendant or his father.

Terry testified that he had received one half the payment of the bills of exchange drawn by him, but that he had not accepted such payment whether made by the defendant or his father in full satisfaction of the defendant's liability, and had not released him from liability, nor authorized any one else to do so.

The defendant testified, among other matters, that he understood that by the terms of the contract Cushman and he were each responsible for one half the amount of the bills, and that they accepted the bills with that understanding, and that this was assented to by Williams and Strahan; that thereafter the defendant came to Worcester, to the home of his father ; that some time in October, 1894, he was informed through his father, that the bills of exchange had been sent to Worcester for collection ; that the defendant knew nothing about the payment of the bills of exchange; that he had no money to pay them or any part of them ; that he did not furnish the money that was actually paid on the bills, and that it was furnished by his father on his own account and not by way of advancement to him.

G. Henry Whitcomb, father of the defendant, testified that in October, 1894, he received notice from the president of the First National Bank of Worcester, that there were at his bank for collection the three bills of exchange in suit; that he went to the bank and saw there the original bills of exchange ; that he said that he would pay one half of the face of each of the bills with-

out interest, provided such payment should entirely relieve the defendant from all further obligation and liability upon the same; that the president of the bank replied that he had no authority to accept such an adjustment as that, but would write to Brown Brothers, the representatives in New York of Brown, Shipley, and Company, who had sent him the bills of exchange, stating the offer and asking for instructions; that thereafter early in November he received notice from the president of the bank by telephone, that Brown Brothers had authorized the acceptance of one half the face of the notes, and that in consideration of such payment the obligation of the defendant, Henry E. Whitcomb, should be entirely liquidated; that he thereupon paid one half the face of each of the bills, amounting in all to $429.95, upon the understanding and condition that the liability of the defendant on all the bills of exchange should be extinguished; that the money was paid out of his own personal bank account; was his own money and not that of his son, and that throughout the entire transaction he acted on his own behalf, and not as agent for anybody else.

The president of the bank gave a similar account of the transaction. He testified that, on receipt of the remittance, Brown Brothers wrote to the bank, " We think it best to accept that sum in liquidation of his proportion of the debt," and signed and delivered the following receipt: " Received from Mr. H. E. Whitcomb Four hundred and twenty-five & 94/100 dollars, being his proportion of one half the amount of drafts as noted below, and which amount we are to remit on a/c of said drafts to London."

At the close of the evidence, the defendant asked for four rulings, which are mentioned and explained in the opinion of the court. The judge refused to give the rulings requested, and instructed the jury in the manner stated in the opinion.

The court submitted to the jury the following question: " Was there a consideration from the defendant for more than one half of the amount of the bill of exchange for 85 pounds? "

To this the jury answered, " Yes."

The jury returned a verdict for the defendant upon the first two counts of the declaration, upon the bills drawn by Terry, and for the plaintiff on the third count, which was upon the bill

for £85 drawn by Williams and Strahan. The defendant alleged exceptions.

*J. R. Thayer & A. P. Rugg,* for the defendant.

*H. L. Parker, Jr.,* for the plaintiff.

BARKER, J. The defendant, a resident of Massachusetts, while in London, England, on August 1, 1894, accepted with one Cushman the bill of exchange for eighty-five pounds declared on in the third count of the declaration. The bill was drawn by Williams and Strahan, printers, of London, for the amount of an account due them for printing, and was payable to their order two months after date, and directed to Messrs. Whitcomb and Cushman, Victoria Hotel, Northumberland Avenue. The acceptance was in these words: " Accepted Payable at Brown Shipley & Co. Founders Ct. City, E. C. H. E. Whitcomb. S. G. Cushman."

The questions raised by the bill of exceptions are as to the consideration for the defendant's acceptance, and as to the effect of a payment of $206.12 made on the bill on November 9, 1894, at Worcester, to the First National Bank of Worcester, which bank then had possession of the bill for collection, having received the same for that purpose from Brown Brothers and Company of New York, who had received the bill for collection from their London house of Brown, Shipley and Company. The payment of November 9, 1894, the defendant contended was not made by him or from his funds, but by his father, and upon an agreement made by the bank with the knowledge and assent of Brown Brothers and Company that the payment should be in full of all liability of the defendant upon the bill of exchange. There was evidence tending to show that the payment was made by the father from his own funds, and it was not disputed that at the time of the payment, which amounted to one half of the face of the bill without interest, the bank did agree that the payment should be in full of the defendant's liability. There was also evidence tending to show that the drawers of the bill were its real owners, that Brown, Shipley and Company, Brown Brothers and Company and the bank were merely agents for the collection of the bill for the drawers, and that the latter had neither authorized nor ratified the agreement made by the bank. Before the suit was brought the bill had been transferred

to the plaintiff to enable him to sue the same for the benefit of the drawers, and all defences existing between them and the defendant were open to him.

The defendant contends that because the promise of the acceptance was to pay eighty-five pounds, an agreement to receive a certain number of dollars in full payment, followed by payment of the sum agreed, would bar the action. He also contends that because the bill was accepted payable in London the payment of a less sum at Worcester, upon agreement that such payment should absolve the defendant from all liability, would bar the action. Also that payment by his father from the father's own funds of a less sum than that due upon the bill, upon agreement that the payment should be in full of the defendant's liability, would be a bar.

He does not now contend that his first three requests for rulings, founded upon these contentions should have been given in terms, but that they were sufficient to call attention to and require the court to charge upon the principles on which the requests were founded.

There having been no dispute at the trial that the bank and Brown Brothers and Company were merely agents for collection, neither of the three requests could have been given as presented to the court, for the reason that each was drawn upon the theory that the action of the agent in accepting less than the amount due was of itself conclusive upon the owners of the bill, without regard either to the authority of the agent or ratification by the principal.

The defendant makes no such contention here. The court below was correct in holding that the action of the collection agents in receiving less than the full amount of the debt in satisfaction of the whole would not be a bar to this suit, unless made either by the original authority of the owners of the draft or subsequently ratified by them.

The part payment seems to have been in fact made by a transfer of dollars and cents from one bank account to another, no money having been passed from hand to hand. But neither the fact that the payment was reckoned in dollars at the rate of eighty-eight and a half cents to the pound sterling, nor that it was made at Worcester would furnish a legal consideration for

an agreement that the payment should discharge the whole debt. The bill called for money and the payment was effected by the transfer of something which the parties mutually considered to represent money, and also to be one half of the money for which the bill called. Assuming that the owner of the draft was entitled to be paid a certain amount of sterling money, his acceptance of its equivalent in dollars rather than in sterling money was not an advantage to himself nor was the payment of the equivalent in dollars rather than in sterling a detriment to the defendant. The acceptance made the bill payable at London; but when it was dishonored the defendant became bound to pay the bill wherever he might be, upon due presentation to him of the bill for that purpose, and it was neither an advantage to the owner of the bill nor a detriment to the defendant to have payment made in Worcester where the defendant resided, he not showing that he had made any arrangements, or been put to any expense to place funds for its payment in London. The statement in *Pinnel's case,* 5 Co. 117, gives the reason why the payment upon request of five pounds at York will be satisfaction of ten pounds due at Westminster that " the expenses to pay it at York, is sufficient satisfaction." So in *Jones* v. *Perkins,* 29 Miss. 139, the defendants, residents of Jackson, Mississippi, owing the plaintiffs who were of New York a note payable at Jackson, not being obliged to go out of Mississippi to make payment, and upon the plaintiff's agreement to receive less than the whole amount of the note in satisfaction if paid in New York having been at the expense of sending an agent to New York with funds to make the payment, it was held a good satisfaction because of the expense incurred in sending the agent with funds to New York. A good general statement of the rule is found in 1 Am. & Eng. Encyc. of Law, (2d ed.) 415, Title " Accord and Satisfaction," " Where, by a mode or time of payment, variant from that provided for in the contract, a new benefit is or may be conferred upon the creditor, or burden imposed upon the debtor, a new consideration arises out of the transaction and gives validity to the agreement of the creditor."

The court below was right, therefore, in not treating the fact of payment at Worcester or in our money rather than sterling as of importance or requiring instructions to the jury.

We need not now inquire, and we do not decide, whether payment in part by a stranger to the debt is a good considera- tion for the release of the balance of the demand.  The instruc- tions to the jury adopted that view of the law, and told them that if the part payment was made by the defendant's father upon the condition that the defendant should be released from all responsibility and the condition " was made either by the original authority of the owners of the drafts or was subse- quently ratified by them, then that would be a release and satis- faction."  The part payment having been made to and the agreement entered into with a mere agent for collection this was at least sufficiently favorable to the defendant.

The defendant objects to that portion of the charge which gave the rule of law if the jury should find that the defendant himself made the part payment, and contends that there was no evidence that the defendant made the payment.  But the bill of exceptions does not purport to state all the evidence, and the let- ters which are given written by the bank to Brown Brothers and Company indicate that the negotiations were with the de- fendant personally and that the payment was accepted by the  . bank from him.  The court could not assume that the jury would believe the testimony that the payment was by the father.

We are of opinion that the court was right in declining to give the fourth ruling requested, and upon the question of con- sideration for the defendant's acceptance, the charge was suffi- ciently favorable to the defendant.

The defendant and Cushman were connected as general and financial managers, respectively, with the Amherst College Mu- sical Association, and arranged for and had charge of the associ- ation in a tour which it made giving entertainments in England during the summer of 1894.  Before leaving the United States they had made a written contract with one Terry of London to engage transportation, lodging, hotel accommodations and entertainment halls and to secure the printing necessary, and to arrange for bill posting and newspaper advertisements.  In this contract it was stipulated that Terry should receive for his ser- vices ten per cent of the net receipts of each concert and that if this ten per cent did not amount to £100 he should have the

balance " from the aforesaid managers, each being held responsible for one-half the whole amount." The contract had no stipulation as to who should be responsible for the bills contracted by Terry. He got Williams and Strahan to print certain programmes the bill for which was £85, and which the printers charged to the " Amherst College Musical Association, Charles Terry, Manager." This was the debt for which the draft was drawn and accepted. The defendant testified that he met one of the firm of Williams and Strahan in London who said that he understood that Cushman and the defendant were each responsible for one half of the printing bill. On the other hand there was evidence introduced by the plaintiff that there was no agreement at any time by the firm of Williams and Strahan that the defendant was liable for one half only of the account or one half only of the bill of exchange.

The fourth request was in substance that if Terry and the defendant and Cushman entered into an agreement that the loss of the tour should be borne in equal shares by the defendant and by Cushman, and if that arrangement was known to Williams and Strahan and if in pursuance of it the bill of exchange was accepted by the defendant and he had paid his half of it the plaintiff could not recover. But there was no stipulation in the contract with Terry limiting the defendant's responsibility for any expense to be incurred by Terry in the work of arranging for and advertising the tour. The stipulation was merely as to Terry's own compensation. There was no limitation in the contract as to his authority to contract bills for necessary printing, and the contract shows no reason why one who furnished programmes upon his order could not look to the defendant and Cushman jointly for pay.

The court instructed the jury in effect that if they found that the conversation testified to by the defendant took place, and that Williams and Strahan understood that they were to hold the defendant for only one half of their bill, there was no consideration for his acceptance of more than one half of the bill of exchange ; and in that case the defendant would not be liable in the action if one half had been paid ; but that if there was no such understanding, there would be full consideration for the defendant's acceptance. Whether this instruction was correct

or not it was at least sufficiently favorable to the defendant and his exceptions upon this branch of the case must be overruled.

The remaining exception is to the ruling that there was no evidence that the payment was accepted or made by the authority or with the assent of Williams and Strahan. The ruling was right. There was no evidence that the bank or that Brown Brothers and Company were more than mere collection agents, without authority to compromise ; and no evidence that Williams and Strahan received the money with knowledge that it was paid by any one other than the defendant. In the absence of such knowledge the retention of the money would be no evidence of authority or of ratification.

*Exceptions overruled.*