WILLIAM M. STOCKBRIDGE *vs.* J. FRANK MIXER & others.

Suffolk.    March 23, 26, 1917. — June 27, 1917.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Equity Jurisdiction,* To reach and apply equitable assets. *Partnership.  Equity Pleading andPractice,* Appeal, Trial of issues by jury, Master, Auditor, Exceptions.    *Evidence,* Materiality.    *Contract,* Implied.

A suit in equity may be maintained to reach and apply, in payment of a debt due to the plaintiff from two of the defendants who are copartners, shares of stock in a Maine corporation, which belonged to the partners and which had been placed with a bank under an agreement between one of the partners and a third person, also a defendant, whereby, if the third party so elected, he could by a certain date pay a certain sum of money and receive the shares of stock from the bank, and, in case he did not so elect, the shares should be returned to the partners; the alternative, contingent and vested rights of the partners under the agreement to a redelivery of the shares of stock or at the third person's option to receive money in place of the stock, being valuable rights which the plaintiff as a creditor of the partnership could not enforce through an action at law.

A reference of a suit in equity to a master is a matter of discretion which ordinarily is not a subject of review on appeal or exception.

After a suit in equity to reach and apply equitable assets in payment of a debt due to the plaintiff has been referred to a master who has filed a report and after an interlocutory decree has been entered setting aside the report and discharging the reference, it is within the discretionary power of a judge to vacate such decree, to frame issues for the jury as to whether the alleged debt was owed to the plaintiff by the principal defendants, and to order that the master's report be treated as the report of an auditor at the trial of the issues. In the present case an appeal from an interlocutory decree made in the exercise of such discretion was dismissed.

After the entry of the interlocutory decree that the master's report be treated as the report of an auditor, objections and exceptions to the report, filed when it was a master's report, become immaterial.

At the trial of issues framed for a jury in a suit in equity against a copartnership for the collection of an alleged charge for professional services as a lawyer rendered to the copartnership in connection with devising a plan whereby certain rights owned by the copartnership could be sold, it appeared that one means suggested and carried through by the plaintiff was the incorporation of the business of the copartnership.  There was evidence that the plaintiff rendered to the corporation when incorporated a bill for services performed in procuring such incorporation, which was much smaller than that to the partnership which was the basis of the suit, and that he received payment of that bill.  Evidence was offered by the plaintiff and was admitted in explanation of the reason for the rendering of the bill to the corporation, and there was conflicting evidence

as to whether the bill to the corporation was intended to include the services to the copartnership. That question was left to the jury, who answered that it was not so intended. *Held,* that the evidence explanatory of the bill to the corporation was admitted properly; and that it could not be ruled as a matter of law that the rendering of the bill to the corporation and receiving payment of it barred the claim against the copartnership.

At the trial of such issues, it was proper to admit evidence tending to show that an attorney at law, who questioned the right of the defendants to sell their rights above described, had been referred by one of the defendants to the plaintiff as their counsel, that the attorney had conferred with the plaintiff and that the plaintiff had convinced the attorney of the feasibility and practicability of his plan.

At the trial of the issues above described, it was *held* that, in connection with other portions of the charge of the judge to the jury defining the rights and obligations of the parties, it was proper for the judge to rule that "the plaintiff is entitled to recover the full value of all his services rendered less such sums as he has received from the defendants [copartners] and the corporation, and whether the plaintiff did or did not include all [his] services in [the] bill [to the corporation above described]."

It further appeared in the above described suit that an *ad interim* injunction had issued directing the third party, in case he elected to purchase the stock in accordance with his agreement with one of the copartners, to retain an amount sufficient to pay the plaintiff's claim, that the third party had done so and had filed an answer so stating, that subsequently he had died and that an administrator of his estate had represented it to be insolvent and a commissioner in insolvency had been appointed. *Held,* that the equitable lien in favor of the plaintiff followed the proceeds in the hands of the third party, and that the plaintiff's claim should be presented to the commissioner in insolvency.

BILL IN EQUITY under R. L. c. 159, § 3, cl. 7, filed in the Superior Court on December 9, 1909, and afterwards amended, by an attorney at law to reach and apply to the payment of a debt of $9,500, alleged to be due to the plaintiff for professional services, certain equitable rights of the principal defendants described in the opinion.

The defendants demurred to the bill as amended. The demurrers were heard by *Richardson,* J., by whose order an interlocutory decree was entered overruling them. The principal defendants appealed.

On May 3, 1911, by order of *Richardson,* J., an interlocutory decree was entered referring the suit to a master. From this decree the same defendants appealed.

On November 26, 1912, the master filed his report, substantially to the effect that the principal defendants owed the plaintiff $9,350 with interest from the date of the filing of the bill. The principal defendants filed voluminous objections to the report,

covering twelve printed pages of the record, and exceptions based upon them.

On January 27, 1913, a motion of the defendants that the report of the master be set aside and that the order of reference be discharged was allowed by *Pierce,* J., "without prejudice to any motion that may be made to refer to an auditor," and the case was reported to this court and, as reported in 215 Mass. 415, it was decided on June 18, 1913, that an issue should be framed for a jury on the question of the existence of an alleged debt of the principal defendants to the plaintiff, the court in its opinion stating at page 419, "So much of the master's report as does not deal with this issue may stand. Whether the portion of it which deals with this issue should be treated as an auditor's report can be determined only on motion therefor made in the Superior Court."

On December 29, 1913, on a motion by the plaintiff and by order of *Jenney,* J., interlocutory decrees were entered vacating the decree of January 27, 1913, discharging the reference to the master and ordering that the master's report "be treated as an auditor's report at the trial of said cause upon issues framed for a jury." From these decrees the defendants appealed. They also moved that the propriety of the decrees be reported to this court for determination, and, this motion being denied, appealed from such denial.

On the same day an interlocutory decree was entered by order of *Jenney,* J., framing the issues for a jury hereinafter described.

From this decree also the defendants appealed.

The issues were tried before *Lawton,* J.

Theodore Eaton, Esquire, a witness for the plaintiff referred to in the opinion, testified in rebuttal, that in the early part of January, 1909, he was consulted by Turner, Buffington and Hawkes with reference to the right of Mixer Brothers to run wires through underground conduits in the streets of Boston; that within a few days before January 29, 1909, he had a talk with the defendant J. Frank Mixer; that he told Mixer he had been consulted in relation to the Low Tension Wire Association agreement and as to whether the rights of Mixer Brothers under that agreement could be sold or not; that he told Mixer there were certain clauses in the agreement which forbade a sale without the

unanimous consent of all members of the association; that he couldn't see how they were going to get around that; that Mixer said, "I wish you would come and see my attorney, Mr. Stockbridge." That was about all he remembered of that conversation; that he had seen the Low Tension Wire Association agreement and the Buffington options some days before that conversation and had examined the matter with some care, and one result was that he had told Mixer he couldn't see how his clients were safe in buying this property; that then Mixer asked him to see Stockbridge; that he did see Stockbridge on January 29, 1909.

Subject to an exception by the defendants, Mr. Eaton then was permitted to testify substantially as follows: That he telephoned Mr. Stockbridge that Mixer had asked him to go and see him; that Stockbridge invited the witness to come over; that he told Stockbridge he was acting for persons who might be purchasers of the Mixer Brothers' rights under the Low Tension Association agreement, and that his difficulty was with certain clauses in the agreement which contemplated the sale of the rights without the unanimous consent of all the members of the association, and also prohibited letting contracts of that sort; that he told Stockbridge he had already told Mixer he didn't see that Mixer Brothers could make a sale of their rights and that the other members of the association would probably not consent to a sale; that Stockbridge said if a corporation were organized under the name of the Mixer Brothers Company he thought the consent of all the other members of the Association could be procured, and the organization of the corporation would be followed by the transfer by the Mixer Brothers, the partnership, to the corporation of their rights and that the transfer would be assented to; that the witness told Stockbridge that seemed a good way out of it; that following this conversation he wrote the letter of January 29; that the last sentence in the letter, "I am of the opinion also that arrangements can be made so that a purchaser from the Mixer Brothers would obtain all of Mixer Brothers' rights," referred to the suggestion of the plaintiff that the rights of the partnership would be transferred to the corporation and that then the stock of the corporation would be secured by the purchaser, who would control the corporation and all its assets.

Other material evidence and exceptions by the defendants

saved during the trial of the issues are described in the opinion. At the close of the evidence, the defendants asked for the following rulings:

"1. That there is not sufficient evidence to warrant a finding that the business of Mixer Brothers was unsalable or not vendible previous to the rendition of the services by the plaintiff.

"2. That the presentation of said bill of March 29, 1909, with the accompanying letter was a proposition by the plaintiff to receive from the corporation in payment for his professional services $150 if the sale under the Buffington option did not go through, and $250 if the sale did go through.

"3. That the defendants and the Mixer Brothers Corporation, having accepted, or at least assented to, said proposition, and the plaintiff having extended further credit on said bill, and having accepted further part payments on account thereof without objection on his part, and without making any claim for additional compensation from anybody, the bill of March 29, 1909, became an account stated between the parties, and the plaintiff is now precluded from recovering a value greater than the amount charged in said bill for services therein set forth.

"4. That under all the circumstances of this case attending the rendition of the bill of March 29, 1909, the assent of the defendants and of the corporation thereto, the extension of credit by the plaintiff, and his acceptance of subsequent payments on account without objection on his part, it is not competent now for the plaintiff in this suit to increase those charges unless on clear and positive proof of mistake or other definite equity of well recognized sufficiency.

"5. That there is not sufficient evidence to warrant a finding of any mistake on the part of the plaintiff or of any other definite equity of well recognized sufficiency.

"6. That the services of the plaintiff in organizing the Mixer Brothers Corporation under the laws of the State of Maine to carry on the business in this Commonwealth of the transmission of intelligence by electricity did not increase the value of the business of the Mixer Brothers because said corporation had no authority under the laws of this Commonwealth to carry on said business in said Commonwealth.

"7. That said suit was prematurely brought.

"8. If the jury shall find that it is understood between the plaintiff and the Mixer Brothers that the bill of March 29, 1909, stated the account between the parties, and that the entire amount found due on such settlement had been paid, less $100, then in the absence of fraud or mistake the plaintiff is bound by that account on the value of the services therein referred to rendered prior to March 29, 1909.

"9. That the plaintiff, having presented the account or bill of March 29, 1909, containing an expressed charge for the services rendered by the plaintiff to the Mixer Brothers, and the Mixer Brothers Company having actually paid money on account thereof which was accepted by the plaintiff, it is not competent now for the plaintiff to increase his charge for the same services unless on clear proof of fraud or mistake.

"10. That the jury is warranted in finding on the evidence of the plaintiff's account of March 29, 1909, and his letter of the same date, that the plaintiff's services rendered up to that date either to the firm of Mixer Brothers or to the corporation had been agreed upon and that credit was extended on that account by the plaintiff to the firm of Mixer Brothers and to the corporation, and that the plaintiff at that time made no distinction between the copartnership and the corporation, and reserved no right to recover an additional sum for said services from the Mixer Brothers either as a firm or as individuals."

The trial judge refused to rule as requested; and the principal defendants alleged exceptions.

The issues submitted to the jury and the answers of the jury thereto were as follows:

"1. Did the plaintiff include in his bill of March 29, 1909, to the Mixer Brothers Company all the services he had rendered to that date to the firm of Mixer Brothers, to the defendants, and to the Mixer Brothers Company?" The jury answered, "No."

"2. Is the plaintiff entitled to recover from the defendants anything in addition to the amount already received by him?" The jury answered, "Yes."

"3. If the jury answer Question 2 in the affirmative, how much is he entitled to recover in addition to the amount already received by him?" The jury answered, "$10,387.50."

An order for a final decree was made by *Jenney, J.,* in the following form:

"This case came on to be heard and after hearing and upon consideration thereof, it is ordered, adjudged and decreed,

"1. That the answers to the issues heretofore submitted to a jury be and the same hereby are confirmed.

"2. That the defendant J. Frank Mixer, as he is the surviving partner of the copartnership of Mixer Brothers, is indebted to the plaintiff in the sum of . ($10,387.50, with interest on said amount from May 12, 1916, to date of the entry of decree), and said defendant is also ordered to pay to the plaintiff

as costs of suit, and execution shall issue for said amounts in the ordinary form.

"3. That the estate of the deceased defendant Alfred S. Hayes, now represented by Charles M. Davenport as administrator, as now appears of record, for the purpose of satisfying in whole or in part the said indebtedness of the defendant J. Frank Mixer to the plaintiff, is accountable to the plaintiff in the sum of $10,000, but no execution shall issue against said administrator therefor, nor against the goods or estate in his hands unless the Probate Court of Middlesex County wherein proceedings in insolvency are now pending shall later decree the said estate solvent, and except upon application therefor to this court; without prejudice, however, to the plaintiff's right to maintain said claim before the commissioners in insolvency appointed by said Probate Court or before said court in any manner allowed by law.

"4. This suit is dismissed as against the defendant Metropolitan National Bank."

The same judge reserved the case by the following order: "So far as authorized to do so pending the decision of the full court on the defendant J. Frank Mixer's bill of exceptions, I reserve and report the case for the consideration of the full court, upon the findings of the jury, the master's report, the entry of the final decree, and all questions of law, including those involved in the various interlocutory appeals, being of opinion that the merits of the controversy are so affected thereby that the questions involved therein ought to be determined before further proceedings, except those upon the bill of exceptions, and that they ought to be heard in connection with the bill of exceptions."

*A. A. Gleason & J. J. Higgins*, for the defendants Mixer.

*C. M. Davenport*, administrator of the estate of Alfred S. Hayes, *pro se.*

*G. W. Anderson*, for the plaintiff.

PIERCE, J. The plaintiff on December 9, 1909, brought this bill in equity under R. L. c. 159, § 3, cl. 7, to establish a debt alleged to be owing to him for legal services from the defendants, J. Frank and William A. Mixer, as copartners under the name of Mixer Brothers and to reach and apply in payment thereof certain property of the copartnership, to wit, certificates of stock of a Maine corporation then held by the defendant bank under an agreement to return the stock on demand to Mixer in case the defendant Hayes should fail to carry out on or before December 12, 1909, the terms of an agreement and option of purchase, under seal, executed by and between J. Frank Mixer and Alfred S. Hayes, May 29, 1909; and in the alternative should Hayes on or before December 12, 1909, elect to pay the sum of $121,500, the sum under the option to be paid on or before that day, with interest thereon as provided in said agreement, and should elect to demand and receive from the defendant bank the shares of stock, then and in that case the plaintiff seeks to apply so much of said sum as shall be sufficient to secure the payment of the indebtedness due from the defendants J. Frank and William A. Mixer, as the same may be determined and ascertained.

On December 10, 1909, upon due notice and hearing, an *ad interim* injunction issued in substance restraining the defendants Mixer from demanding and receiving the shares of stock in the custody of the bank, and directing Hayes in case he shall elect to purchase the stock to retain of the purchase money otherwise payable by him to the defendants Mixer the sum of $10,000 until the further order of the court.

The defendant Hayes on February 3, 1910, in answer to the allegations of the plaintiff's bill ". . . says he has no interest in said controversy except that he holds ten thousand dollars ($10,000) in accordance with and subject to the order of the court." The defendants Mixer in their several answers to the bill of complaint and to the amended bill of complaint, by way of demurrer contend first, that the bill of complaint does not allege facts

entitling the plaintiff to any relief in equity; and, second, that the plaintiff has a plain and adequate remedy at law.

At the time the bill of complaint was brought and at the time the injunction issued as above set forth, the defendant, the Metropolitan National Bank held thirty thousand shares of the Mixer Brothers Company, a corporation organized under the laws of the State of Maine, subject to the terms and conditions of an agreement under seal between J. Frank Mixer and Alfred S. Hayes, dated May 29, 1909. By the terms of that contract Mixer agreed to deposit all of said stock, together with a copy of the agreement with Hayes, with the bank on or before June 2, 1909, upon the simultaneous payment by Hayes to him of $2,500. As appears by the evidence the money was paid to Mixer and the stock was deposited with the bank to be held by the bank subject to the terms and conditions of the agreement. The agreement further provided that the bank should have a lien on the stock for the payment of its services as custodian and for other expenses referred to in the agreement, and that it should deliver all the shares of stock to Hayes or to his order should Hayes in performance of the terms of the agreement elect to pay to Mixer $7,500 on or before June 12, 1909, $3,500 on or before July 12, 1909, and $121,500 on or before December 12, 1909. At the time this bill was filed it further appeared that Hayes had made payment of the instalments to be paid in June and July, and that he proposed and intended on or before December 17, 1909, to make the final payment and to demand and receive from the defendant bank the said thirty thousand shares of stock.

The demurrer was overruled rightly. *Lord* v. *Harte,* 118 Mass. 271. The certificates of stock in the custody of the bank could not have been attached in an action at law because a sale on execution of the shares would not convey any interest in the stock as stock. They were not chattels, subject to seizure on trustee process, for a like reason and because the right of Mixer to have the shares of stock redelivered by the bank was contingent on the discharge of any lien of the bank created by the agreement, and upon the non-exercise of the terms of the option granted to Hayes.

The alternative, contingent and vested rights of Mixer to a redelivery of the shares of stock and the right to receive money in

place of the stock from Hayes, in case the option of purchase was exercised, were valuable rights which a creditor of Mixer could not enforce through the remedies of an action at law. Upon the service of the injunction the plaintiff acquired an equitable lien upon the rights of Mixer to the shares of stock, in the custody of the bank and to the proceeds of the shares of stock which he could follow and enforce. *Wiggin* v. *Heywood,* 118 Mass. 514. *Worcester* v. *Boston,* 179 Mass. 41. *Snyder* v. *Smith,* 185 Mass. 58. It is plain that any remedy at law would be imperfect, and that the court acquired jurisdiction with the filing of the bill to proceed under R. L. c. 159, § 3, cl. 7, which was not lost by the later exercise of the option. *Campbell & Zell Co.* v. *Barr Pumping Engine Co.* 182 Mass. 304, 306. *Rosen* v. *Mayer,* 224 Mass. 494. *Leavitt* v. *Dimond, ante,* 216. *Milkman* v. *Ordway,* 106 Mass. 232. See *Haskell* v. *Waties,* 2 Rich Eq. 8. *Sarter* v. *Gordon,* 2 Hill Eq. 121.

The appeals from the order of reference to a master, from the order overruling a motion to recommit to the master, from an order vacating a former order discharging the reference to a master, and from the interlocutory decree ". . . that the master's report now on file be treated as an auditor's report at the trial of said cause upon issues framed for a jury" must be overruled.

The reference to a master in a suit in equity and the appointment of an auditor in an action at law are matters for the exercise of judicial discretion, which ordinarily is not subject to revision on appeal or exception. *Bradley* v. *Borden,* 223 Mass. 575, 586. *Fair* v. *Manhattan Ins. Co.* 112 Mass. 320. The motion to recommit in either case likewise is a matter of discretion. *Tobin* v. *Kells,* 207 Mass. 304, 310. The formal error of reference to a master in an action at law is cured by an order that the master's report shall be treated as and have the force of an auditor's report. *Falmouth* v. *Falmouth Water Co.* 180 Mass. 325. *Norwood, petitioner,* 183 Mass. 147. *Gray* v. *Chase,* 184 Mass. 444. Because objections cannot be taken to an auditor's report, it necessarily follows that exceptions founded thereon cannot be considered and must be discharged when the report of a master becomes an auditor's report. *Eagan* v. *Luby,* 133 Mass. 543. *Moore* v. *Dugan,* 179 Mass. 153.

In the case at bar it is not contended that the report considered as an auditor's report is in any respect insufficient. No

motion was made to recommit the report as an auditor's report and no exceptions were taken to rulings or to a refusal to make rulings as to the effect to be given to that report by the jury.

On March 29, 1909, the plaintiff sent a statement to "The Mixer Bros. Company," for the "amount due for professional services in devising plan for sale of the property of Mixer Bros., organizing the Mixer Bros. Co. . . . from February 9th, 1909, to date — $250.00." On the same day the plaintiff sent a letter of explanation "as to the amount which I have charged for services" to J. Frank Mixer. It is the contention of the defendants that all services performed by the plaintiff for Mixer Brothers, individually or as a firm, or for the corporation of Mixer Brothers Company prior to March 29, 1909, were intended to be included and charged in that statement and that this understanding was borne out by the letter of the plaintiff dated March 29, 1909. It is the further contention of the defendants that "the bill of March 29, 1909, became an account stated between the parties" by the acceptance of the bill and by the partial payments made thereon. On the other hand the plaintiff claimed that the account was rendered to the corporation as a proper charge against it, and in support thereof introduced in evidence a vote of the board of· directors, passed March 11, 1909, with the approval of J. Frank Mixer, which reads, "Upon motion duly seconded it was voted that the treasurer be authorized to pay a sum not exceeding three hundred dollars to cover the expense of organization and matters incidental thereto." The claim against the defendants is for services and for devising the plan or scheme whereby the rights, the ownership of the property which Mixer Brothers owned, could be sold, could be made vendible, could be made in such a way they could be sold and carry with them the essential, valuable right to use them. A consideration of the reported conflicting testimony leads to the conclusion that there was evidence to warrant the finding of the jury that the services were performed by the plaintiff for the defendant, Mixer Brothers, individually, and that they were not included, and were not understood to be included, in the bill rendered to the corporation.

The request numbered 1 to rule "That there is not sufficient evidence to warrant a finding that the business of Mixer Brothers was unsalable or not vendible previous to the rendition of the serv-

ices by the plaintiff" could not have been given as a matter of law. There was ample evidence that the business of Mixer Brothers before incorporation was not vendible in the sense the plaintiff was employed by the defendants to make it salable.

The requests numbered 2, 3, 4, 5, 8, 9 and 10, could not have been given in form. In substance they were given in instructions not excepted to.

Requests numbered 6 and 7 relate to the value of the services rendered at the time of the bringing of the action. It was admitted by the defendants that if the jury were satisfied under the instructions from the court that everything was done by the plaintiff which he says was done and in the manner and way in which he says it was done, then the charge he made was fair and reasonable. As the jury found for the plaintiff under full instructions in this regard, not excepted to, it must be assumed that they found that the plaintiff had performed and rendered the services in manner and form as claimed.

The admission of evidence to show the circumstances under which the letter of March 29, 1909, was sent to Mixer, was proper. The letter was put in evidence by the defendants and unexplained was an admission of the value placed by the plaintiff on his services up to that date. It also was evidence of an implied agreement of an account stated. We think the evidence was admissible in connection with the other fact in evidence, to prove that the plaintiff and the defendants understood that the bill rendered to the corporation was not intended to include all claims against Mixer Brothers individually. *Butler* v. *Butler,* 225 Mass. 22, 25.

In the absence of an offer of proof it cannot be said that the testimony of Hoyt as to what J. Frank Mixer did in regard to the sale on May 28, 1909, was excluded wrongly. *Cecconi* v. *Rodden,* 147 Mass. 164, 169.

The conversation between Mr. Eaton and the plaintiff was admitted rightly. Eaton had been requested by the defendants to see the plaintiff, and the conversation objected to was had in pursuance of that request. *Gott* v. *Dinsmore,* 111 Mass. 45. See *Proctor* v. *Old Colony Railroad,* 154 Mass. 251. The conversation of the plaintiff with Mr. Eaton was in the nature of acts intended to demonstrate the feasibility of the scheme alleged to have been devised by the plaintiff at the requests of the defend-

ants; and it was also relevant as tending to prove that the plaintiff had originated the plan and not the defendants as they claimed to have done with the assistance of other people than the plaintiff.

The ruling that "the plaintiff is entitled to recover the full value of all his services rendered less such sums as he has received from the defendants and the corporation, and whether the plaintiff did or did not include all services in bill of March 29th," was properly given when considered in connection with other portions of the charge defining the rights and obligations of the parties.

The equitable lien in favor of the plaintiff, which attached to the stock in the custody of the bank upon the service of the injunction upon Mixer Brothers and Hayes, followed the proceeds to the extent of $10,000 upon the election of Hayes to purchase the stock from the defendants Mixer. Upon the death of Hayes and the insolvency of his estate, the claim should be as it was presented to the commissioners. *Guptill* v. *Ayer,* 149 Mass. 49, 52. *Snyder* v. *Smith, supra. Rioux* v. *Cronin,* 222 Mass. 131, 139.

The entry must be: Exceptions overruled. Decree to be entered to conform to the order for a final decree.

*So ordered.*