ıHOSHER-PLATT COMPANY *vs.* WILLIAM L. MILLER.

Suffolk. March 21, 1921. — May 27, 1921.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & CARROLL, JJ.

*Practice, Civil,* Amendment, Auditor. *Agency,* Scope of authority. *Partnership. Contract,* Construction. *Corporation.*

A suit in equity under R. L. c. 159, § 3, cl. 7, was referred to a master who heard it fully and filed a report and, after a rescript from this court deciding that it could not be maintained owing to lack of evidence that any equitable assets of the principal defendant were in the possession of the other defendants, it was amended into an action at law and, previous to the enactment of St. 1914, c. 576, was referred to the same person who had heard it as master to be heard also by him as an auditor, the court ordering that the auditor in his discretion without further hearing of evidence might make as his report the whole or any part of his report as master, and " he shall not be required to hear anew any evidence offered before him when sitting as master." The auditor heard no further evidence, did not reconsider the evidence formerly submitted before him, and adopted as his report the findings previously made by him as master. Motions by the defendant to recommit and to discharge the report were denied. The action then was tried upon the report and other evidence, the defendant excepting to the admission in evidence of the report. *Held,* that

(1) The report of the auditor rightly was admitted in evidence;

(2) The order of the court as to the use by the auditor of his former report as master did not exceed its discretionary power.

A foreign corporation, not shown by any statute of its domicil to have been given authority to enter into a partnership with an individual, has no such power.

At common law the capacity to form a partnership is not an inherent power of a corporation.

A contract between a foreign corporation and an individual, by which the individual was employed as the corporation's accredited representative in the New England States, " and all business resulting from his efforts and secured by him and accepted by the . . . [corporation] within said territory " and all inquiries received by the corporation therefrom were " to be referred " to him, did not constitute

the individual a partner of the corporation, and, while it gave the individual power to make with another in behalf of the corporation a contract within the scope of its business subject to its approval, it did not give him power to compromise a claim of the corporation against that individual growing out of such a contract and, upon receipt of a sum less than the amount of the claim, to give in behalf of the corporation a release under seal from all indebtedness.

An agent's authority cannot be enlarged by his own declarations or acts.

At the trial of an action for $3,849.90 alleged to be due to the plaintiff, a corporation, under a contract with the defendant, it appeared that an agent of the plaintiff, who with the plaintiff's assent had made the contract with the defendant, wrote to the plaintiff, after a talk with the defendant, that the defendant would see the plaintiff's president the next day and proposed " to give you a check for $2000 & a note for the balance . . . & I advise you to take it; " that the defendant thereafter interviewed the plaintiff's president, contending that a reduction of the plaintiff's claims should be made; that the plaintiff then wrote its agent enclosing a statement of the claim and directing him to collect it; that the agent then wrote to the defendant enclosing the plaintiff's letter; that the statement of the account then was with the letter or already was in the defendant's possession, that thereafter the agent with an attorney saw the defendant, who paid $1,500 to the attorney and received from the agent a release under seal of all demands in behalf of the plaintiff. The next day the transaction was repudiated by the plaintiff. The agent testified without contradiction that, in an action brought by him against the plaintiff, he "understood that" the $1,500 "was credited to the plaintiff by the court." The jury found for the plaintiff and, as appeared from answers by the jury to oral questions by the judge in the absence of parties and counsel upon the coming in of the verdict, under instructions by the judge credited the defendant with the $1,500. Upon exceptions by the defendant, it was *held*, that

(1) It could not be ruled as a matter of law that the agent had authority to make the compromise in the behalf of the plaintiff;

(2) It could not be ruled as a matter of law that the plaintiff had ratified the compromise by accepting the $1,500, it not appearing that the money ever came into the plaintiff's possession;

(3) The defendant could not complain of the instructions giving him credit for the $1,500.

CONTRACT, originally begun as a suit in equity filed in the Superior Court on July 5, 1904, to reach and apply under R. L. c. 159, § 3, cl. 7, in satisfaction of a debt alleged to be owed to the plaintiff from the defendant, equitable assets of the defendant Miller in the possession of other defendants, and on May 25, 1908, after the decision of this court reported in 190 Mass. 285, that the suit could not be maintained in equity because of the lack of evidence of any such equitable assets, amended into an action at law with a declaration in two counts, the first count being upon an account annexed and the second count being for breach of an express contract for the construction by the defendant of a coal pocket in Chelsea.

The suit in equity had been referred to and heard by a master, and, on November 13, 1909, after the amendment into an action at law, the action was referred to the same man to be heard by him as an auditor. On September 24, 1914, an order was entered by direction of *Wait*, J., which recited that, it appearing that the auditor, as master when the action was a suit in equity, "heard the parties and their evidence at great length, and filed a report as master stating his findings of fact on the issues involved; that this report was confirmed by this court and that confirmation affirmed by the Supreme Judicial Court; that the cause was held improperly before this court in equity and has been transferred to the law side of this court; that no new issues are involved; that the cause has been sent to . . . [the same man] as auditor; that the evidence presented to him as master was taken stenographically and is now accessible to him and to the parties; that unnecessary repetition of the testimony or arguments ought not to be permitted; it is ordered that said auditor may in his discretion, without further hearing of evidence, make as his auditor's report the whole or any part of his earlier report as master and that he shall not be required to hear anew any evidence offered before him when sitting as master. Any party may by objection or request raise any question of law by him deemed proper in regard to the admission or application of evidence, or otherwise, as though the witness were present and testifying, or the ruling were made at the hearing before the auditor at which such objection or request is made."

The auditor reviewed his own report formerly made as master and adopted his findings then made with changes now immaterial, neither considering anew a stenographic copy of the evidence taken before him when master nor hearing further evidence.

After motions by the defendant to recommit and to discharge the report of the auditor had been denied, the action was tried before *Sanderson*, J., upon the report and other evidence. Proceedings at that trial as to the report and material evidence are described in the opinion.

Upon the return of the jury to the court room with their verdict, the judge asked the foreman," In making up the verdict did you credit the defendant with the $1,500 paid to Mr. Flinn? " and the jury answered, "That was already accounted for in the

auditor's report." The judge further asked, " You allowed it as the auditor did? " and the foreman answered, " As the auditor did." The verdict then was recorded for the plaintiff in the sum of $2,926.30; and the defendant alleged exceptions.

By St. 1914, c. 576, § 2, R. L. c. 165, § 55, was amended to read as follows: " When a civil action is at issue, the Supreme Judicial Court or the Superior Court, in its discretion, and a police, district or municipal court, if both parties assent thereto in writing, may appoint one or more auditors to hear the parties, examine their vouchers and evidence, state accounts and report upon such matters therein as may be ordered by the court. The auditor's findings of fact shall be *prima facie* evidence upon such matters only as are embraced in the order; but the court at the trial shall exclude any finding of fact which appears in the report to be based upon an erroneous opinion of law, or upon evidence which is inadmissible. Whenever the auditor makes a ruling as to the admissibility of evidence and objection is taken thereto he shall, if requested so to do, make a statement of such ruling in his report. The auditor shall not make any finding of fact which depends upon the decision of a question of law, unless he makes alternate findings or states in his report the view of the law upon which his finding depends, together with such subsidiary facts as will enable the court to pass upon the question."

St. 1914, c. 576, § 6, provides that the statute "shall apply to all cases hereafter referred to auditors."

*E. I. Smith,* for the defendant.

*L. S. Hamburger,* (*H. A. Baker* with him,) for the plaintiff.

BRALEY, J. The plaintiff originally sued in equity but after the decision in *Hosher-Platt Co.* v. *Miller,* 190 Mass. 285, that the bill could not be maintained an amendment was allowed under R. L. c. 173, § 52, as amended by St. 1911, c. 275, changing the suit into an action at law, and the case was referred to an auditor who had acted as special master in the former proceedings. The auditor, subject to the objection of the defendant Miller to whom we shall refer as the defendant, admitted the master's report, and no further evidence being offered he found the facts substantially as set forth by the master, and upon the coming in of the report the defendant moved that it be discharged and recommitted. The motion having been denied, the plaintiff offered the report in evi-

dence, to the admission of which the defendant excepted because the findings of the auditor did not appear to be based on any competent evidence, and that in so far " as the report relied on the authority of the order " of the court " with respect to the taking of evidence and the use of the earlier report of the master, exceeding the ordinary powers of an auditor in such matters, it was inadmissible."

It was settled before the enactment of St. 1914, c. 576, that rulings of law contained in the report of an auditor constituted no part of a report which is to be dealt with in the trial before the court only as a recital of facts. *Zembler* v. *Fitzgerald,* 234 Mass. 236. If a party deems himself aggrieved by the admission of incompetent evidence, he must make his objection by a motion to recommit, and, the rule having issued, on November 13, 1909, the report was properly admitted. *Collins* v. *Wickwire,* 162 Mass. 143, 145. *Jean* v. *Cawley,* 218 Mass. 271. See now St. 1914, c. 576, § 6. *D'Urso* v. *Leone, ante,* 58.

The order of September 24, 1914, that the auditor may in his discretion without further hearing of evidence make as his report the whole or any part of his report as master, and "he shall not be required to hear anew any evidence offered before him when sitting as master " did not exceed the discretionary power of the court. The case having been amended from law into equity, the master's report could have been treated as having the effect of an auditor's report. *Stockbridge* v. *Mixer,* 227 Mass. 501, 510.

It is said in the exceptions that the evidence as reported by the auditor is substantially a correct statement of the facts appearing at the trial in so far as it purported to state them, but further evidence was introduced by the defendant, and upon all the evidence he contends as matter of law that a settlement between him and the plaintiff of all matters in dispute had been effected, and that the action cannot be maintained. It appeared that on March 4, 1904, one Flinn, purporting to act for the plaintiff, entered into an agreement under seal with the defendant whereby the plaintiff upon receipt of "fifteen hundred dollars " which was duly paid, discharged him from all further liability. If the plaintiff is bound by the agreement, it is conceded that the defendant's request for a directed verdict should have been granted. The defendant's first contention is, that under Flinn's contract of employment by

the plaintiff, Flinn had authority to make the compromise. The judge rightly ruled as matter of law that the contract did not create a partnership. It shows that he was employed as the plaintiff's accredited representative in the New England States, "and all business resulting from his efforts and secured by him and accepted by the . . . [plaintiff] within said territory," or all inquiries received by the plaintiff therefrom were "to be referred" to him. The charter of a plaintiff corporation moreover is the measure of its powers. It is a foreign corporation. It is not shown by any statute of its domicil to have been given authority to enter into a partnership with an individual, and at common law the capacity to form a partnership is not an inherent corporate power. If a "corporation may enter into partnership with an individual, there would be two principals, the legal person and the natural person, each having, within the scope of the society's business, full authority to manage its concerns, including even the disposition of its property." *Whittenton Mills* v. *Upton,* 10 Gray, 582, 595. The contract of employment, while undoubtedly conferring on Flinn authority to make the agreement with Miller in the name of the company subject to the plaintiff's acceptance, which was given, and the performance of which by Miller left a very considerable balance due from him to the plaintiff for materials and supplies, did not expressly nor by necessary implication, empower him to accept in settlement a sum much less than the amount shown by the account to be due and to execute and deliver an instrument under seal releasing Miller from all indebtedness. *Upton* v. *Suffolk County Mills,* 11 Cush. 586. *Temple* v. *Pomroy,* 4 Gray, 128, 131. The power of an agent to cancel a contract of his principal, cannot ordinarily be inferred from a general authority to make the contract. *Paige* v. *Stone,* 10 Met. 160. *Craig Silver Co.* v. *Smith,* 163 Mass. 262, 269. *Saunders* v. *Whitcomb,* 177 Mass. 457, 466. *Williams* v. *Dugan,* 217 Mass. 526. *Berthold* v. *Goldsmith,* 24 How. 536.

The balance of the defendant's indebtedness as claimed by the plaintiff was $3,849.90. It appeared and the jury could find that on February 28, 1904, Flinn by letter informed the plaintiff's president that after a long talk with Miller, "he is going to N. Y. tonight, & will be in to see you in the morning. He proposes to give you a check for $2000.00 & a note for the balance, & clean

the matter up & I advise you to take it," and that on or about February 29, 1904, the defendant in an interview in New York with the president, claimed that a reduction should be made, and a considerable discount allowed by reason of the failure of the plaintiff to comply with the terms of its contract.  On March 3, 1904, the president wrote Flinn at Boston enclosing a statement of the account showing the balance due, and directing Flinn to see Miller "without fail and obtain this settlement," which the jury also could find meant the payment in full of $3,849.90.  Flinn on March 4 wrote the defendant enclosing a copy of the president's letter, and the bill was either transmitted with the letter, or was in the defendant's possession.  It was on this date and under these circumstances that the agreement of compromise was made by Flinn in the name of the plaintiff, and the defendant thereupon paid "fifteen hundred dollars . . . to the attorney who accompanied Flinn."  The plaintiff's president March 10 having been informed of what had been done sent a telegram to the defendant, saying that Flinn "was unauthorized to sign receipt as agent or otherwise.  The settlement you offered Flinn unsatisfactory and will not be accepted."  It is clear that Flinn's authority could not be enlarged by his own declarations or acts, *Mussey* v. *Beecher,* 3 Cush. 511, and the judge correctly held that the letter shown to the defendant " did not as a matter of law give him authority to make a compromise settlement."  The ostensible powers of an agent are his real powers, *Danforth* v. *Chandler,* 237 Mass. 518, and the only substantial defence remaining is, whether Flinn had been given apparent authority on which the defendant could rely to make the settlement.  This was a question of fact on all the evidence. *Temple* v. *Pomroy,* 4 Gray, 128, 131.  *Rintamaki* v. *Cunard Steamship Co.* 205 Mass. 115.  *Beaucage* v. *Mercer,* 206 Mass. 492.

But even if the jury determined that the compromise was unauthorized, the defendant further contends that acceptance and retention of the money was a ratification.  *Murray* v. *Mayo,* 157 Mass. 248, 249, 250.  The answer is, there was no evidence that the money even came into the plaintiff's possession.  If the settlement was unauthorized, the plaintiff was not chargeable with any payment made to Flinn, or to his counsel, no part of which had ever been forwarded to, or demanded by the plaintiff.  " The

meaning of ratification is, and always has been, the adoption of an act purporting to be done, or, at least, done in fact, on behalf of the ratifier." *New England Dredging Co.* v. *Rockport Granite Co.* 149 Mass. 381, 382.

The defendant's requests for a directed verdict, and that it sufficiently appeared that Flinn had authority to make the settlement, and that "the contract between the plaintiff and Flinn and the written instructions to him so far as they were communicated to the defendant authorized Flinn to make the settlement in question," were rightly refused. The remaining requests, that, if Flinn had authority to employ counsel, a settlement made in pursuance of instructions to the attorney would bind the plaintiff, and that, if such apparent authority appeared, the defendant was justified in making the settlement in accordance with the terms agreed upon with the attorney, were sufficiently covered by the instructions or assumed conclusions of fact on conflicting testimony. *Dolphin* v. *Plumley,* 175 Mass. 304. *Carnes* v. *Howard,* 180 Mass. 569. The uncontradicted evidence of Flinn tended to show that in an action brought by him against the company he "understood that this amount was credited to the plaintiff by the court," meaning the "fifteen hundred dollars." The credibility of the witness however was for the jury, and the defendant as matter of law cannot complain of the instructions, that if the jury found for the plaintiff, the amount paid under the alleged compromise should be deducted, and a verdict returned for the balance, or of the question asked when the verdict was returned, whether such deduction had been made, and the answer in the affirmative, although neither the defendant nor his counsel was present. *Edwards* v. *Worcester,* 172 Mass. 104.

We have examined all of the defendant's exceptions, and no error of law appearing they must be overruled.

*So ordered.*