CRAIG SILVER COMPANY vs. IRA P. SMITH & another.

Suffolk.    December 13, 14, 1894. — March 2, 1895.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Corporation — Party — Contract — Certificate of Stock — Defence — Pleading — Release of Claim by Treasurer of Corporation — Power of Attorney — Discharge of Cause of Action.*

If a corporation organized in West Virginia, but having its usual place of business in Connecticut, enters into a contract for the sale of certain of its shares, and also of goods manufactured by it, and delivers a part of the shares and also certain goods in pursuance thereof, and afterwards another corporation with the same name is organized by the same persons in Connecticut, but without any consolidation of the two corporations, an action for the price of the shares and of the goods sold can only be maintained by the West Virginia corporation; and an action brought in this Commonwealth in the name common to both corporations, and not stating which of them is the plaintiff, but alleging that the plaintiff made the contract, will be assumed to have been brought by the West Virginia corporation, although it is described as having its usual place of business in Connecticut. And in such action a tender of a certificate of shares, in which the name of the corporation is that common to both corporations, and which does not in terms state the domicil of the corporation, but which is dated in Connecticut, and is signed by an officer of the Connecticut corporation who was not an officer of the West Virginia corporation, will be deemed to be a tender of shares in the Connecticut corporation, and not a tender of such shares as the contract calls for.

One who has been summoned as trustee in another jurisdiction is not liable to be held in an action subsequently brought against him by his creditor here; but this defence is not available, whether pleaded in bar or abatement, if his liability elsewhere has wholly ceased without payment by himself.

An answer or plea in abatement cannot be filed after an answer on the merits; the latter waives all matters in abatement.

The treasurer of a corporation has no authority, merely by virtue of his office, to release a claim of the corporation.

A power of attorney executed by a corporation, and authorizing its treasurer to sell the right to use a secret process in Europe, with full power to do everything requisite and necessary in the premises, does not confer authority to pay a subagent whom he employs by releasing a large claim which the corporation holds against such sub-agent.

CONTRACT, in two counts. The first count alleged that, on February 9, 1893, the plaintiff made a contract with the defendants, a copy of which was annexed, whereby the plaintiff agreed to sell and the defendants agreed to buy two hundred and fifty shares of the capital stock of the plaintiff upon certain terms,

with which the defendants had failed and neglected to comply. The second count was upon an account annexed for goods sold and delivered. The copy of the contract annexed to the declaration described the party of the first part as " the Craig Silver Company, a corporation duly and legally organized under the laws of the State of West Virginia," and having its principal place of business in Bridgeport in the State of Connecticut. The writ was dated September 13, 1893, and described the plaintiff as "a corporation duly established according to law, and having its usual place of business in Bridgeport in the State of Connecticut."

Trial in this court, without a jury, before *Holmes,* J., who reported the case for the consideration of the full court; such judgment to be entered as the court might direct. If judgment was entered for the plaintiff, it was to be for $14,395.43 on the first count, and for $4,176.26 on the second count. The questions reserved, and also the facts, appear in the opinion.

*T. M. Maltbie* (of Connecticut) *& J. W. Keith,* for the plaintiff.

*A. Hemenway,* for the defendants.

ALLEN, J.   1. We will first consider the question, " Is the plaintiff the proper party to maintain the action? "

The charter of the West Virginia corporation bore date July 16, 1892; that in Connecticut, May 3, 1893. The latter by its terms was not to take effect till accepted by the stockholders. This acceptance was on May 15, 1893. Till this last date there was no corporation except that organized in West Virginia. The contract with the defendants was dated February 9, 1893, and on its face was the contract of the West Virginia corporation, and the defendants' promise was to that corporation. No goods were delivered to the defendants after May 15, 1893, and the liability of the defendants to pay for them was a liability to the West Virginia corporation. There can be no doubt, therefore, that the proper party to bring an action is the West Virginia corporation. It is a little curious that a doubt should now for the first time arise as to which of the two corporations is actually the plaintiff. This is not stated in terms in the writ or declaration; but it is alleged that the plaintiff made the contract, and this implies that the corporation which made the contract is the party suing upon it. We therefore treat the

plaintiff as being the West Virginia corporation, which is the proper party to maintain the action if it can be maintained.

2. "Was the certificate of stock tendered to the defendants a compliance with the terms of said contract?"

By the contract, the plaintiff sold to the defendants two hundred and fifty shares of its capital stock for $25,000, to be paid in instalments, — viz., $10,000 in cash, $10,000 in ninety days, and $5,000 in six months, — less a commission of ten per cent allowed in a previous proposal by the plaintiff to the defendants. The first payment was made, and a certificate for one hundred shares was delivered. On or about August 9, 1893, a certificate for one hundred and fifty shares of the Craig Silver Company was tendered, not stating in terms whether it was the company organized in West Virginia or that organized in Connecticut. The contract says nothing in express terms about the delivery of certificates of the shares, but, in the absence of anything to show the contrary, it must be implied that such delivery was to be made concurrently with the payments. The plaintiff now contends that no tender of certificates was necessary, and cites decisions to show that a subscriber to the shares of a corporation becomes a stockholder upon making payment for the shares, and before the delivery to him of the certificate. But that rule is not applicable to the contract in this case, nor was it so understood by the parties; and the report, as we understand it, was not intended to present that question. The question presented is whether the shares represented by the certificate were such as the contract called for. And this leads us to inquire what the shares really were, and what was the relation of the two corporations to each other.

The two corporations were never consolidated or amalgamated so as to become a single corporate body. The charter in West Virginia contains no provision looking to a subsequent incorporation elsewhere, or to a sale of its franchise; nor is there anything to show any authority or sanction under the laws of that State for any such change in the character of the corporation there organized. The charter granted in Connecticut provides for succession to the functions of the West Virginia corporation, but not for amalgamation with it. There is no provision that the two shall become one; nor could such provision in Con-

necticut alone avail to accomplish that purpose. We have not therefore to deal with a case where shares in a consolidated corporation were tendered in performance of a contract to deliver shares in one of the original corporations, nor to consider the subsequent legal status of two corporations which have united under adequate legislative authority. Here, the two corporations remained distinct corporate bodies, there having been no legislation in either State looking to an amalgamation.

The certificate tendered seems to be studiously silent as to the domicil of the Craig Silver Company, whose shares it represents. But it is signed by " H. R. Parrott, President," and Parrott had been elected president of the Connecticut corporation, but not of the West Virginia corporation. Moreover, the certificate was issued and dated in Connecticut, it bearing upon its face the words, " Bridgeport, Conn., Aug. 9, 1893." There is nothing to show that the West Virginia corporation could hold meetings for the choice of officers outside of that State. Its charter requires it to " have a local office, as prescribed by law, at Parkersburg in the State of West Virginia." We cannot assume that meetings of stockholders could be held in Connecticut, in the absence of anything to show the existence of such power. Cook, Stock & Stockholders, (3d ed.) § 589, and cases there cited. Moreover, after the Connecticut charter was granted, a meeting was held and the charter accepted, and thereupon directors were chosen, and afterwards Parrott was chosen President, he never having been chosen president of the West Virginia corporation. The directors of the Connecticut corporation held a meeting on July 10, 1893, and it was voted " that the president and secretary be and hereby are authorized and directed to take proceedings to collect all claims due this company from Smith and Winchester [the defendants] or either of them." In pursuance of this vote the certificate above mentioned was tendered to the defendants. Taking all these things together, it is obvious that the certificate tendered was a certificate of shares in the Connecticut corporation. It may be assumed that this corporation had succeeded to the property and rights of the West Virginia corporation, but it was not identical with that corporation. Not to mention other reasons why the defendants are not bound to look upon the shares as identical with those

which under their contract they were to receive, the measure of personal liability for corporate debts may be different in the two States. We do not know how this is, and need not inquire. It is enough to say that the defendants contracted to buy shares in the West Virginia corporation, and were not bound to accept shares in the Connecticut corporation. They protested and voted against the acceptance of the Connecticut charter, and never in any way ratified its adoption. Their relations were simply with the West Virginia corporation, and there was nothing in its charter, or, so far as made known to us, in the laws of that State, or in their own conduct, which bound them in any manner to enter into or to recognize the Connecticut corporation. Under these circumstances, it is clear that they could not be compelled against their will to take the shares in the Connecticut corporation. See *Clearwater* v. *Meredith*, 1 Wall. 25, 39–41; *Nashua & Lowell Railroad* v. *Boston & Lowell Railroad*, 136 U. S. 356, 372–382; *Hamilton Ins. Co.* v. *Hobart*, 2 Gray, 543; *John Hancock Ins. Co.* v. *Worcester, Nashua, & Rochester Railroad*, 149 Mass. 214; *Day* v. *Worcester, Nashua, & Rochester Railroad*, 151 Mass. 302; *Richmond Factory Association* v. *Clarke*, 61 Maine, 351; Cook, Stock & Stockholders, (3d ed.) §§ 500, note, 502, 896, and cases there cited; Beach, Corp. §§ 351–353, and cases there cited. For these reasons, this question which was reserved is answered in the negative.

3. " Are the said trustee suits a bar to the action ? "

Independently of our statutes, the general rule of law, subject to some exceptions, is that the pendency of another action for the same cause can only be pleaded in abatement; and that the pendency of such other action in another State is not a good plea in abatement. 1 Chit. Pl. (14th Am. ed.) 469, 470. *Morton* v. *Sweetser*, 12 Allen, 134, 137. *Moore* v. *Spiegel*, 143 Mass. 413. A partial exception to the latter rule has been established in this Commonwealth, and also elsewhere, for the protection of persons who have been summoned as trustees in other States. One who has been summoned as trustee in another jurisdiction is not liable to be held in an action subsequently brought against him by his creditor here. *American Bank* v. *Rollins*, 99 Mass. 313. *Whipple* v. *Robbins*, 97 Mass. 107. *Embree* v. *Hanna*, 5 Johns. 101. *Wallace* v. *M'Connell*, 13 Pet. 136, 151. But

the defence on this ground, even when seasonably pleaded, is not an absolute one. It is only available so long as the peril elsewhere continues. The object is to protect defendants here from double liability. If liability elsewhere has ceased, a defence on that ground will not avail here. This was held in *Meriam* v. *Rundlett*, 13 Pick. 511, and recognized by implication in *Garity* v. *Gigie*, 130 Mass. 184, and *Eddy* v. *O'Hara*, 132 Mass. 56, in which cases it was held that, if one who is sued here makes payment or is compellable to pay elsewhere under proceedings instituted against him by way of garnishment or trustee process, it will be available here by way of defence. In *American Bank* v. *Rollins*, 99 Mass. 313, it was unnecessary to advert to this reasonable qualification of the rule there announced by way of illustration and explanation of the point there decided. In whatever way this defence is set up, it is only good when the defendant has been held or may be held elsewhere. If his liability elsewhere has wholly ceased without payment by himself, he cannot forever escape from paying his debt here merely because he was for a time liable to be held to pay it elsewhere. 13 Pick. 515, 516. It is found by the court in the present case that in the first trustee suit in Connecticut judgment was rendered for the plaintiff and execution issued, which was returned unsatisfied, January 15, 1894, and that by the statutes of Connecticut " the lien of said judgment and execution upon the funds due from the defendants herein to the plaintiff had been terminated." This termination of the lien in Connecticut was before the defendants had set up this ground of defence in their amended answer. As to the second trustee suit in Connecticut, the defendants set up in their answer that it was then still pending; but the court found that the attachment was dissolved by filing a bond to dissolve it, in compliance with the statutes of Connecticut. The date of the dissolution of the attachment is not given, and it is not material. It appears that at the time of the trial the defendants were no longer under any peril from the trustee suits in Connecticut, and therefore no defence was then available for them, by reason of those suits, whether in bar or abatement.

It is further to be observed that the defendants in this case filed a general answer on the merits, without any plea in abate-

ment or suggestion in any form of the trustee suits in Connecticut, on the 1st of November, 1893; and not till May 10, 1894, were these suits set up in defence in an amended answer, by reason of which, according to the language of the amended answer, "the defendants say that this action was begun before the right of action accrued to the plaintiff." By Pub. Sts. c. 167, § 13, defences in abatement may be made by answer; and by the 5th rule of this court answers and pleas in abatement must be filed within the time allowed by law for entering an appearance, unless otherwise specially ordered by the court for good cause shown. By general rule of law an answer or plea in abatement cannot be filed after an answer on the merits; the latter waives all matters in abatement. The original answer, if seasonably filed, may contain matters in abatement and matters on the merits; but after an answer on the merits it is too late for an answer in abatement. *Hastings* v. *Bolton*, 1 Allen, 529. *Jaha* v. *Belleg*, 105 Mass. 208, 211. *O'Loughlin* v. *Bird*, 128 Mass. 600, 602. It was for this reason, we presume, that the learned counsel for the defendants sought to make the defence on the ground of the trustee suits serve as matter in bar, and did not call it matter in abatement. Whether this defence was available at the time when it was first set up, in the amended answer, is certainly open to doubt; but as the point has not been argued, we do not place the decision on that ground.

4. "Is said release a discharge of the cause of action?"

Soule was treasurer of both corporations, but it is quite clear that he had no authority to release the plaintiff's claim merely by virtue of his office as treasurer.* We have had occasion more than once heretofore to consider the implied powers of treasurers of corporations; see *Merchants' National Bank* v. *Citizens' Gas Light Co.* 159 Mass. 505, and cases there cited;

---

* The release in question recited that, for a valuable consideration, "we do agree to immediately withdraw any and all suits or actions at law" against the defendants, "hereby acknowledging our full satisfaction, and further agree to bind ourselves" not to bring any other suits against the defendants in connection with the business of the Craig Silver Company; and was signed "D. E. Soule, Attorney in fact," and "Craig Silver Co., D. E. Soule, Treas.," and sealed.

but no case holds or implies, and indeed the defendants do not contend in argument, that Soule had such authority simply as treasurer.  But it is contended that this power is incident to his authority under the power of attorney which he held.  This instrument was executed by the Connecticut corporation, which we may assume to have been the beneficial owner of the claim against the defendants, and it appointed Soule attorney to sell the right to use the secret process for making Craig silver in Great Britain and Ireland and the British Provinces, except Canada, and the several countries of Europe, and to convey the same upon such terms and conditions and with such restrictions as might be agreed upon by the parties, and to receive and receipt for the money ; with " full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises fully, with full power of substitution and revocation."

Formal powers of attorney are construed with some strictness; Story, Agency, §§ 68, 69 ; but it may be stated, in general, that Soule might probably use all necessary and reasonable means of executing his agency with effect, including the employment of necessary assistance on reasonable terms.  We see nothing to enable us to say that the employment of the defendant Smith was in itself unreasonable, and it does not seem to have been so treated at the trial.  But Soule could only employ Smith on such reasonable terms as must be deemed to have been within the contemplation of the plaintiff at the time of the execution of the power of attorney.  There is certainly no presumption in favor of Soule's authority to make such an unusual bargain as was made in respect to Smith's compensation.  We would not go so far as to say that a sub-agent could never under any circumstances be paid by releasing a claim in favor of the principal against him.  The claim might be small, and his services so valuable as clearly to exceed the full amount thereof.  We limit ourselves to the facts of the present case.  The claim against the defendants was already in suit, and it was for a very considerable sum.  The plaintiff's president and secretary were by special vote intrusted with the enforcement of it.  The litigation was pending in Massachusetts.  Soule and Smith were in London.  There is nothing to show the amount or value of the

services which Smith was to render. They might be either great or small. So far as can be judged from the facts reported to us, it would seem that the act of Soule in releasing the defendants from the plaintiff's claim against them was outside of the authority conferred upon him. This method of paying him is certainly unusual, and, in order to be binding on the plaintiff, there should at least be proof that it was an advantageous arrangement. See `Shaw` v. `Stone`, 1 Cush. 228, 245; `Upton` v. `Suffolk County Mills`, 11 Cush. 586. The presiding justice ruled that it was not reasonable to get Smith's services in this way, and that the release was therefore not a defence to this action. This ruling will stand unless we can see that it was wrong. But, so far as we can see, it was right. If, under the agreement with Soule, Smith or the defendants rendered services for which the plaintiff would be responsible, the particular mode of payment provided for is not binding on the plaintiff, and compensation must be sought in some other way. No other mode of compensation is sought for in defence of this action.

According to the terms of the report, the result is that judgment is to be entered for the defendants on the first count of the declaration, and for the plaintiff in the sum of $4,176.26 on the second count.                              *So ordered.*