## ALABAMA GROCERY CO. v. HAMMOND.＊

### In re JOBBERS' OVERALL CO.

(Circuit Court of Appeals, Fifth Circuit. December 19, 1922.)

#### No. 3923.

1. **Courts ⟨⟩323—Burden is on defendant to prove allegation of citizenship is untrue.**

   The burden is on the defendant to prove that the allegation of plaintiff's citizenship was untrue, so that the plaintiff's failure to prove that allegation does not defeat the court's jurisdiction.

2. **Sales ⟨⟩1(4)—Description of lots of goods held sufficient.**

   Where a buyer ordered a specified quantity of two lots of the seller's overalls, and a different quantity of two other lots, without specifying the proportion of each lot in the specified quantities, but the goods were all of the same general description, it is apparent that the right of selection out of the various lots was recognized, and if the buyer failed to make that selection, the right to do so passed to the seller, and the buyer acquiesced in the allotment by the seller by failing to object thereto, so that the contract was binding, and not invalid for failure sufficiently to describe the goods.

3. **Sales ⟨⟩177—Buyer's letters held to constitute rescission.**

   Letters by the buyer, requesting cancellation of the contract and repeating the cancellation after the seller's refusal to acquiesce therein, with a statement that the buyer could not dispose of the quantity of goods therein specified were sufficiently explicit to constitute a repudiation of the contract.

4. **Sales ⟨⟩340—Seller can recover contract price of goods ready for delivery.**

   Where, before the contract was repudiated by the buyer, the seller had completed the manufacture of the goods and had them ready for shipment to the seller, he could hold the goods at the buyer's disposal and recover the full contract price.

In Error to the District Court of the United States for the Northern District of Alabama; William I. Grubb, Judge.

Action at law by the Jobbers' Overall Company against the Alabama Grocery Company, in which L. P. Hammond, as trustee in bankruptcy of the plaintiff company, was substituted as plaintiff. Judgment for plaintiff, and defendant brings error. Affirmed.

John S. Stone, John S. Coleman, and Ernest L. All, all of Birmingham, Ala. (Haley & Haley, and Tillman, Bradley & Baldwin, all of Birmingham, Ala., on the brief), for plaintiff in error.

E. H. Cabaniss and Jelks H. Cabaniss, both of Birmingham, Ala. (Cabaniss, Johnston, Cocke & Cabaniss, of Birmingham, Ala., on the brief), for defendant in error.

Before WALKER, BRYAN, and KING, Circuit Judges.

BRYAN, Circuit Judge. This suit was brought by the Jobbers' Overall Company, a Virginia corporation, against the defendant, the Alabama Grocery Company, an Alabama corporation. Pending suit the plaintiff was adjudicated a bankrupt, and the trustee in bankruptcy was substituted as plaintiff. Plaintiff obtained judgment for the purchase price of certain goods, and the defendant assigns error.

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

＊Certiorari denied 43 Sup. Ct. 433, 67 L. Ed. ——.

The defense at the trial was based upon alleged misrepresentations of the overall company to the effect that it had no other jobber in Birmingham and that it did not permit jobbers to cut prices fixed by it. This issue was submitted to the jury, with the instruction that, if they found for the plaintiff, the measure of damages would be the purchase price of the goods as of the time they were contracted to be delivered. The contract of purchase was entered into on May 29, 1920, and provided for delivery on September 30, 1920. The description of the goods in the contract was as follows:

| Lot No. | Doz. |
| --- | --- |
| 840 | 500 |
| 90 | |
| 64 | 100 |
| 44 | |

This contract was executed on behalf of the overall company by its agent. It was acknowledged a few days later by the company by a letter in which a description of the goods appeared as follows:

| No. 840 and | | |
| --- | --- | --- |
| 90 | 500 | doz. |
| 64 | | |
| 44 | 100 | " |

The price upon each lot of overalls was different. At the time provided in the contract the overall company shipped equal amounts of lots 840 and 90, and of lots 64 and 44, being 250 dozen each of the first two lots, and 50 dozen each of the two last-mentioned lots. The defendant received the letter of the overall company and made no complaint of its allotment of the goods to be shipped. August 4, 1920, defendant requested cancellation of the contract, but its request was promptly refused. August 13, 1920, defendant stated in a letter to the overall company:

"There is no way possible for us to place these overalls at the present time, and we, therefore, are compelled to ask you to cancel same," and "we realize that we cannot take on the quantity of overalls that we were induced to believe could be sold in this market. We are therefore taking the matter up with you at this time, notifying you of our intention and decision, and hoping that we can reach a satisfactory adjustment of the matter."

The overall company replied, again refusing to cancel the contract. The evidence discloses that the goods had been made up and were ready for shipment before the requests for cancellation were made, and they were promptly shipped by the overall company in accordance with the contract, but were invoiced at the market price, which was less than the contract price. The defendant refused to accept the goods and they were thereupon stored for it by the overall company. The defendant pleaded the general issue, reserving the privilege to prove any defense it might have.

[1, 2] It is contended here that, because the citizenship of the Overall company was not proved as alleged, the trial court was without jurisdiction. It is sufficient to say that the burden was on the defendant to prove that the allegation of citizenship was untrue, and that therefore this contention is without merit. Fourth National Bank v. Ports-

mouth Cotton Oil Refining Corporation (C. C. A.) 284 Fed. 718 (decided October 30, 1922). On the merits, it is contended that no binding contract arose out of the transaction between the parties, because the goods were not accurately described, and that, if they were, the goods shipped were not those described in the contract, and that the court applied the wrong measure of damages. We are of opinion that the description of the goods is sufficient when considered in connection with the conduct of the parties. In the first place, it is not to be assumed that the parties did not contemplate the purchase of some of the goods of each lot. They were not attempting to do a vain thing, and effect must be given to the contract if upon a reasonable construction that can be done. The goods were all of the same general description, and it is apparent that the right of selection out of the various lots was recognized. If the buyer failed to make that selection, then the right to do so passed to the seller; and the parties acted upon this theory. The defendant by its refusal to object, acquiesced in the allotment made by the overall company. Therefore it must be held that the parties entered into a binding contract.

[3, 4] The defendant's letters to the overall company were, as we think, sufficiently explicit to constitute a repudiation of the contract. 2 Black on Rescission and Cancellation, § 573. However, before the contract was repudiated, the goods had been manufactured and were ready for shipment. The overall company refused to agree to the rescission, and the contract remained in force for the purpose of suit. It also kept the goods until delivery was due and then made every effort within its power to deliver. Upon the wrongful refusal to accept and pay for the goods, they were stored for defendant. We are of opinion that, under these facts, the plaintiff was entitled to sue for the purchase price of the goods, and that, therefore, the trial court did not err in its charge upon the measure of damages. It is settled beyond controversy that the charge would have been a proper one in the case of an executed contract.

But it is contended that this is an executory contract for the sale of staple articles having a market value, and that the only measure of damages for the repudiation of such a contract is the difference between the contract price and the market price. The contention raises a question upon which a conflict of opinion and authority is to be conceded. The decisions which support defendant's contention point out that the difference between the market price and the contract price is a fair measure of the damages, and that to allow a recovery for the purchase price would in effect be to require specific performance. While that is true, the same result follows in cases where executed contracts are involved. The only real basis for the rule, as it seems to us, is that title has not passed from the seller to the buyer, and we are of opinion that this is an arbitrary basis, and one which should not control.

It is suggested that this court in Southern Cotton Oil Co. v. Heflin, 99 Fed. 339, 39 C. C. A. 546, gave its adherence to the rule now contended for by the defendant. But in that case the suit was not for the purchase price of the goods, and the right to recover therefor was not

involved. The cases need not be cited. Many of them are collected in an elaborate note in 51 L. R. A. (N. S.) 735. We think the true rule, and the one in harmony with the weight of opinion in this country, is stated by the editor of that note in the following language:

"A rule more promotive of justice as well as certainty in the law is that which makes the right of the seller to recover the purchase price, where the purchaser refuses to receive the goods, depend not upon the question whether or not the contract is executed, but rather upon the question whether at the time of the breach the situation of the seller with reference to the property is such that by his own act he can, constructively at least, transfer to the buyer the title thereto, without doing anything which will have the effect of unnecessarily increasing the damage, viewed from the situation of the parties at the time of the breach. That is to say, if at the time of the breach of the contract, the property is owned by the seller and is substantially in deliverable condition according to the terms of the contract, then the purchaser, by repudiating the contract, cannot prevent the seller from completing performance sufficient to transfer the title, thereby entitling himself to recover the purchase price; while on the other hand, if, at the time the purchaser repudiates the contract, the property is not in deliverable condition, and to put it in such condition will require either the acquirement of the property by the seller or the expenditure of substantial labor and material in its completion, the rule requiring the injured party to make his damages from the breach of a contract as light as possible forbids the seller from acquiring or completing the property in order to put it in a deliverable state, and requires him to cease his efforts in this regard, and limits him in his recovery to the loss sustained by him, considered with reference to the condition of the property at the time of the repudiation."

We attach much importance in this case to the facts that at the time of the repudiation of the contract the goods had been manufactured and were ready for delivery.

The judgment is affirmed.