**SEAGRAVES v. WALLACE et al.**

**WALLACE et al. v. SEAGRAVES.**

Nos. 5706, 5725.

Circuit Court of Appeals, Fifth Circuit.

June 13, 1930.

Rehearing Denied July 18, 1930.

Clyde A. Sweeton, of Houston, Tex. (Clyde A. Sweeton and Vinson, Elkins, Sweeton & Weems, all of Houston, Tex., on the brief), for appellant Seagraves.

S. J. Brooks and John Neethe, both of San Antonio, Tex. (Williams, Neethe & Williams, of Galveston, Tex., and Templeton, Brooks, Napier & Brown, of San Antonio, Tex., on the brief), for appellees Wallace and others.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

WALKER, Circuit Judge.

This suit asserted claims against O. R. Seagraves (herein called the defendant), based on a written contract entered into in July, 1923, between him and Henry M. Wallace (herein called the plaintiff), as agent for the owners of 2,946½ shares of the capital stock of the Corpus Christi Gas Company, an Arizona corporation, the issued and outstanding capital stock of which was 3,500 shares, each of the par value of $100. That contract (in which the plaintiff as agent was referred to as party of the first part and the defendant was referred to as party of the second part), after recitals as to the capital stock of the corporation mentioned, as to bonds secured by first mortgage on the property of that corporation, some of which had been issued and sold and some of which remained subject to be sold, and that the party of the second part desires to purchase control of the above mentioned 2,946½ shares of capital stock at 25 per cent. of its par or face value, stated that the party of the second part, for and in consideration of the agreements of the party of the first part expressed in the contract, agrees to purchase and pay for the above-mentioned 2,946½ shares of capital stock at 25 per cent. of its face value; the contract providing for the defendant paying $5,000 upon the signing of the contract, $4,600 on or before ten days after the signing of the contract, $3,200 within in sixty days from the signing of the contract, for his giving at the time of signing the contract three interest-bearing promissory notes for sums aggregating $10,000, and for his paying the balance of the stated price in minimum installments payable, respectively, in each month from November, 1923, to and including September, 1924; the contract providing for the party of the second part having the right to pay at any time more than the stipulated minimum installments for the purpose of liquidating in full the entire purchase price at the earliest possible date, the party of the second part to receive a ten per cent. per annum discount on cash payments made in advance of the dates prescribed for the payment of the stated minimum installments. The contract contained the following provisions:

"The party of the first part hereby agrees:

"First: That he will receive and receipt for all moneys transmitted or delivered to him by the party of the second part, in compliance with the terms hereof, and that he will collect and hold in his possession, all certificates of stock of the Corpus Christi

Gas Company, referred to herein, and amounting to two thousand nine hundred forty six and one half (2946½) shares of the par value of One Hundred ($100.00) dollars per share, and

"Second: That upon receipt from the party of the second part of the cash payments provided for herein, and amounting to the sum of Seventy Three Thousand Six Hundred Sixty Two Dollars and fifty cents ($73,662.-50) he will then cause said capital stock to be immediately delivered to the party of the second part, or his order, and that he will also cause a meeting of the board of directors of said Corpus Christi Gas Company to be duly called and held, within ten days thereafter, at which time he will also cause the resignation of all officers and directors of the Corpus Christi Gas Company to be duly presented and accepted, at which meeting he will also cause such persons to be elected, in their steads, as directors and officers of the said Corpus Christi Gas Company, as shall be designated by the party of the second part, after they shall have been first qualified by the transfer of at least one share of the capital stock of the Corpus Christi Gas Company to the name of each of said persons:

" * * * The party of the second part hereby agrees * * *:

"Eighteenth: That after the party of the second part shall have made all payments hereunder, and shall have received the capital stock of the Corpus Christi Gas.Company, purchased hereunder, and shall have assumed the control and management of the business of the said Corpus Christi Gas Company, that it will immediately take all such steps as shall be necessary for the accomplishment of the following purposes.

"1st. To provide for the establishment, and maintenance of a fund for the payment of all semi-annual bond interest coupons, as same shall fall due, on April first and October first of each year thereafter, and the first payment of said semi-annual bond interest shall be made on April 1st, 1924, and

"2nd. To establish and maintain a fund for the purpose of paying off and retiring all the past due unpaid semi-annual interest coupons belonging to the outstanding first mortgage bonds of the said Corpus Christi Gas Company, and that all of said past due unpaid semi-annual interest coupons shall be retired at the rate of two serial coupons, each year, one of said serial coupons to be paid and retired on January first, and one on July first; and further that the first retirement of said past due unpaid semi-annual interest

coupons shall be made not later than January 1st, 1925; and further, that said two funds, referred to above, shall be so established and maintained as to always promptly meet first all semi-annual bond interest coupons, as same shall fall due, on April first and October first of each year, and second to promptly meet the payment of all of the past due unpaid semi-annual interest coupons, on January first and July first, of each year, as above provided, until all of said past due unpaid semi-annual interest coupons shall have been paid and retired, and

"3rd. To make all such provisions as may be necessary for establishing and maintaining with the Union Trust Company, of Detroit, Michigan, a sinking fund, amounting each year to at least five (5%) per cent. of the face value of all first mortgage bonds then outstanding which sinking fund, together with the accumulation of the interest on said sinking fund, shall be sufficient in amount with which to retire all of the first mortgage bonds of the said Corpus Christi Gas Company at or prior to their maturity."

By this suit, brought by the plaintiff for the use and benefit of the owners of the above mentioned 2,946½ shares of capital stock (who appeared in the suit and asked that plaintiff be granted the relief prayed for on their behalf), he sought to recover, (1) the unpaid balance of the price agreed to be paid by the defendant for those shares of stock, and (2) damages for the breach of the above set out provision of the contract with reference to funds for the payment of the interest and principal of the bonds mentioned. By written stipulation a jury was waived. The evidence showed the following: The defendant did not pay any of the above-mentioned monthly installments. Most of the shareholders for whom plaintiff acted in entering into the contract were owners of bonds above referred to. When the contract was breached by defendant plaintiff had in his possession duly indorsed certificates for all the 2,946½ shares of stock, was at all times able to comply with his obligations under the contract, and tendered such certificates into the registry of the court for delivery to defendant on his complying with his obligations under the contract and subject to such orders as the court may make. At the time the contract was entered into the Corpus Christi Gas Company had a gas distributing plant in the city of Corpus Christi, and the right to distribute natural gas in the city, and the defendant and his associates owned natural gas which could be brought to Corpus Christi for distribution. No interest on

the bonds above referred to has been paid since prior to the date the above-mentioned contract was entered into. Over objections duly made the court rendered judgment in favor of the plaintiff for the amount of such of the above-mentioned monthly installments as were found not to be barred by the Texas statute of limitations, and denied the plaintiff any recovery for a breach of the above set out provisions of the contract with reference to providing funds for the payment of the interest and principal of the bonds above referred to. Each of the parties appealed, and complains of the judgment in so far as it was adverse to him.

■■ In behalf of the defendant it was contended that, the contract for the sale of the shares of capital stock being executory, the plaintiff was not entitled to recover the contract price, but his remedy was limited to an action for damages, the measure of which is the difference between the contract price and the market price at the place and time of the breach. This contention is not consistent with the rule which has been followed by this court and is in harmony with Texas decisions. If, at the time of the breach by the buyer in an executory contract for the sale of goods, the subject of the contract is in deliverable condition according to the terms of the contract, and the seller is able and willing to fully perform on his part, he may store or retain the property for the buyer and sue him for the entire purchase price, or he may retain the property and recover the difference between the contract and the market price, or resell the property and recover the difference between the amount realized at the sale and the contract price and the expenses of the sale. Alabama Grocery Co. v. Hammond (C. C. A.) 285 F. 723; Gussman v. Byrd Cattle Co. (C. C. A.) 11 F.(2d) 136; Waples v. Overaker, 77 Tex. 7, 13 S. W. 527, 19 Am. St. Rep. 727; Bowden v. Plow Co. (Tex. Civ. App.) 206 S. W. 124. The seller may be deprived of the right to resort to the first mentioned remedy by the circumstance that at the time of the buyer's breach of the contract the subject of it is not in deliverable condition, with the result that the expenditure by the seller of what is necessary to acquire or complete the property in order to put it in a deliverable condition would be inconsistent with the rule requiring the injured party to make his damages from the breach of the contract as light as possible. The existence of the just-mentioned circumstance was not shown by the evidence in the instant case. As above indicated, when the defendant breached the contract the plaintiff was, and continued to be, willing and able to deliver the property called for by the contract. We conclude that the judgment was not erroneous in so far as it was in favor of the plaintiff.

■ A result of a compliance with the provisions of the contract in question by the parties thereto would have been to vest in the defendant control of the Corpus Christi Gas Company, he being obligated to do what was required to give him such control by becoming the owner of more than 80 per cent. of that corporation's capital stock. For the consideration stated, he obligated himself that that company, when he "shall have assumed the control and management of the business" of it pursuant to the contract, would do the things specified in an above set out part of the contract. This was not a promise or obligation of that company, which was not a party to the contract, but was a promise and obligation of the defendant, who, if he had complied with other obligations imposed on him by the contract, would have had such control of that corporation as would have enabled him to bring about the action by it which he promised it would take. For the defendant to get the shares of stock contracted for, the contract required him, in addition to paying the stipulated 25 per cent. of the face or par value of that stock, to bring about the taking by the Gas Company of the steps necessary to provide and maintain specified funds applicable to the payment of interest and principal of bonds of that company. The defendant's promise in that regard was part of the consideration moving to the plaintiff and his principals to support the promise to sell and transfer the 2,946½ shares of stock to the defendant. The situation of the parties at the time the contract was entered into being that one of them had a controlling interest in the stock of a corporation, which had the right to distribute natural gas in Corpus Christi, and owned a gas distributing plant in that city, and was willing to sell that interest on terms satisfactory to himself and his principals, and the other had or controlled natural gas for the distribution of which in Corpus Christi he wished to provide, it was open to the former not to consent to the latter acquiring the controlling stock interest mentioned, unless he obligated himself to bring about, when he acquired such controlling stock, the payment by the corporation of the interest and principal of bonds secured by a mortgage of its properties. The promise that the gas company would take the steps necessary for

the accomplishment of the purposes mentioned was the individual obligation of the defendant. Russell v. Broadus Cotton Mills (Ala. Sup.) 39 So. 712. The defendant incurred liability by breaching that obligation. That obligation included the bringing about of the maintenance by the gas company of described funds during periods which had not expired when the suit was brought. The evidence showed the existence of rights of action based on breaches of that obligation which were not barred by limitation when the suit was brought. We conclude that it was error to deny any recovery against the defendant for the breach of his promise with reference to the outstanding bonds of the gas company.

The judgment is affirmed in so far as it was in favor of the plaintiff. It is reversed in so far as it was in favor of the defendant, and the cause is remanded for further proceedings not inconsistent with this opinion.

Affirmed in part; reversed in part.