## BUILDERS & MANUFACTURERS MUT. CASUALTY CO. v. PAQUETTE et al.

### No. 1022.

District Court, D. Maine, S. D.
Jan. 12, 1938.

Robinson & Richardson, of Portland, Me. (Forrest E. Richardson, of Portland, Me., of counsel), for petitioner.

Willard & Willard, of Sanford, Me., and Louis B. Lausier and William P. Donahue, both of Biddeford, Me., for respondents.

PETERS, District Judge.

This is a petition by an insurance company, alleged to have been organized and to be existing under the laws of Illinois and to be a citizen of that state, against certain individuals alleged to be citizens of the state of Maine, asking that a judgment be rendered declaring void a certain liability insurance policy issued by the petitioner to one of the respondents. Answers were filed and the matter has been heard and considered on the equity side of the court. Certain issues were submitted to a jury in the form of interrogatories as provided by the Declaratory Judgments Act, U.S.C.A. tit. 28 § 400, under which this proceeding was brought.

Various motions have been filed, determination of which was reserved and which now require rulings; and the case has to be decided on the basis of the pleadings, evidence, and answers of the jury to the questions submitted.

I find the following facts: The petitioner, hereinafter referred to as the insurance company or the company, on February 12, 1936, issued its liability insurance policy in the usual form to the respondent, Josephine Grenier, insuring her, up to a limit of $5,000 for any one person, or $10,000 for any one accident, against loss from liability for damages consequent upon the operation of a certain Chevrolet automobile described therein, the same insurance being, later, transferred from the Chevrolet to a Plymouth sedan. The policy by its terms expired in one year from February 15, 1936.

The policy contained the following provision: "This entire policy shall be void * * * (a) if the interest of the assured in the subject of this insurance be other than unconditional and sole ownership."

Also the following: "This entire policy shall be void if the assured or his agent has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof; or, in case of any fraud, attempted fraud or false swearing by the assured or his agent touching any matter relating to this insurance or the subject thereof, whether before or after a loss."

The policy also contained a clause to the effect that its provisions covered the operation of the automobile while used by another person with the consent of the assured.

In addition to the indemnity against loss from liability for damages, the policy contained a provision obliging the company to defend any suit brought against the assured to enforce any claim covered by the policy, whether groundless or not.

On November 7, 1936, the Plymouth automobile described in the policy was being driven by the respondent Raymond L. Grenier, son of Josephine, when it collided with a tree outside the highway, causing the death of Roland Paquette and Louis Turcotte, who were passengers or guests of Grenier and whose administrators are the other respondents named in this petition. Paquette died after conscious suffering. Turcotte was killed instantly.

Grenier had been previously convicted of reckless driving, fined, and had his driver's license suspended, and by provisions of law in Maine he was prohibited from registering any automobile in his name until he had made arrangements with the secretary of state, by insurance policy or bond, to protect users of the highways against his recklessness.

Grenier, knowing that he was not allowed to drive, purchased the automobiles covered by the insurance policy and, with the connivance of his mother, had them registered in her name, having placed thereon chattel mortgages or conditional sales contracts at the time of purchase. These facts were unknown to the insurance company, which was led to believe that Josephine Grenier was the actual and the sole owner and only person interested in the cars.

The issue at the trial was the validity of the insurance policy. Two questions were submitted to the jury: One was whether Josephine Grenier at the time of the placing of the insurance on the Chev-

rolet was its unconditional and the sole owner; and the other, whether at the time of the placing of the insurance on the Plymouth she was the unconditional and sole owner of that car; and the answer to each question was in the negative.

It being an express condition of the policy that it should be void in case the assured named was not the sole and unconditional owner, it necessarily follows, as a matter of law, from the verdict of the jury, that the policy was void, and judgment should be rendered accordingly unless there appears some reason to the contrary.

After the death of Turcotte and Paquette in the accident of November 7th, a suit was brought in the superior court of the state by the administratrix of Turcotte against Josephine and Raymond L. Grenier to recover damages for the negligent driving of the car, causing the death of Turcotte. The plaintiff discontinued as to Josephine Grenier and was awarded a verdict of $1,500 against Raymond L. Grenier. No judgment has been rendered on that verdict, and a motion by the plaintiff for a new trial is pending. The motion was made on the ground that the amount awarded for damages was inadequate.

On September 28, 1937, before the trial of that suit, the respondent Raymond L. Grenier, in behalf of his mother and himself, notified the insurance company, in writing, by a letter directed to it at 120 S. LaSalle street, Chicago, Ill., that it was the duty of the petitioner to defend the Turcotte suit, and saying "We demand that you comply with this duty. Your lawyers, Robinson and Richardson of Portland, should be notified to defend this suit that they know about." The company had informed Grenier by letter of November 23, 1936, that it disclaimed all liability under the policy and should take legal measures to have it declared void. The company took no part in the defense of the suit in the superior court.

It does not appear that the administrator of Paquette has brought any suit, but the limitation fixed by the statute for so doing has not expired.

### The Matter of Jurisdiction.

The respondents, in various ways and on several grounds, challenge the jurisdiction of this court.

This petition for a declaratory judgment was filed September 29, 1937. On October 6th a motion to dismiss was filed by each of the respondents, the language and the grounds for dismissal in each case being substantially the same, to wit:

First: "That said petition admits on its face prior jurisdiction of the Superior Court of the State of Maine of actions brought and now pending of Theodore Paquette, Administrator of the Estate of Roland Paquette against Raymond L. Grenier and Josephine Grenier, and the prosecution of said suit cannot be enjoined by any federal court, said action not arising from any proceeding in bankruptcy."

Second: "That said petitioner having discontinued its business is not authorized to do business in the State of Maine and is not a citizen of the State of Illinois, and had no legal capacity to appear and prosecute said petition in these proceedings."

It is evident that the motions refer to the suit of Turcotte against Grenier hereinabove mentioned, as only one action was pending in the state court and that was by Turcotte.

Assuming these motions to be amended to apply to the only suit pending, it should be said that there is no question of the right of Turcotte to have brought the suit he did in the state court, and no injunction has issued from this court.

As for the second ground mentioned, there is no evidence that the petitioner is not authorized to do business in Maine; but, even if a previous permission to do business here had been withdrawn, and it had ceased doing business in Maine, the petitioner would not thereby be deprived of access to the federal courts. The allegation that the petitioner was not a citizen of Illinois is, of course, without effect, because it might be a citizen of any state, other than Maine, and have the same right to sue.

The motions to dismiss filed October 6th will be denied.

But the jurisdiction of the court, as based on diversity of citizenship, is further questioned in the answers, as follows:

The answers of Paquette and Turcotte simply deny "the allegations relative to jurisdiction in the stating part of said petition."

The joint answer of the Greniers states that "the defendants deny that the petitioner * * * is an insurance company

organized or existing under the laws of Illinois or any other state except Maine, or that it has any legal place of business in Chicago, in the State of Illinois, or that it is authorized to transact business within the State of Maine, or that it is a citizen of the State of Illinois or any other State except the State of Maine, and demand proof of the same."

The answer also denied that the respondents are citizens of Maine, but at the trial this point was not pressed and the respondents are admittedly citizens of Maine.

■ These answers, in respect to citizenship, amount to nothing more than denials of the allegations in the petition. The Grenier answer is more comprehensive than the others in that it denies that the petitioner is a citizen of any state excepting Maine. While Maine is excepted from the denial, it is alleged that the petitioner cannot do business in Maine. There is no allegation by either party that the petitioner is a citizen of Maine, and the answers in that particular amount simply to a general denial and demand for proof. This is not a plea to the jurisdiction; and, under our practice, it was not incumbent upon the plaintiff to offer proof of its allegations supporting jurisdiction.

The following quotations are applicable:

"The plaintiff alleged the requisite jurisdictional amount,—the defendant denied it in its answer only. There was no formal plea to the jurisdiction, and it was not therefore incumbent upon the plaintiff to offer proof in support of it." Wisconsin Elec. Co. v. Dumore Co., 6 Cir., 35 F.2d 555, 557.

"The bill contained an express averment that the amount involved in the controversy exceeded, exclusive of interest and costs, the sum of $5,000 as to each defendant. The defendants not having formally pleaded to the jurisdiction, it was not incumbent upon the complainant to offer proof in support of the averment." Bitterman v. Louisville & N. R. Co., 207 U.S. 205, 224, 28 S.Ct. 91, 98, 52 L.Ed. 171, 12 Ann.Cas. 693; Bjornquist v. Boston & A. R. Co., infra.

■ However, evidence having been offered at the trial relating to the question of citizenship as affecting jurisdiction, it is fair to consider the case as though a plea in abatement or motion in abatement,

raising the jurisdictional question, had been filed. The burden of proof however is on the defendant on this issue.

In the Circuit Court of Appeals, in this circuit, in the case of Bjornquist v. Boston & A. R. Co., 250 F. 929, 930, 5 A.L.R. 951, Judge Bingham used the following language in a similar situation: "The defendant * * * filed an answer, denying each and every allegation of the plaintiff's writ and declaration and each and every count thereof. * * * No plea in abatement or answer in abatement, setting forth that the plaintiff was a citizen and resident of Massachusetts, was filed. Under the practice of Massachusetts, the question of jurisdiction must be raised either by a plea in abatement or an answer in abatement. Rev.Laws 1902, c. 173, §§ 18, 19. And it is held that a plea to the merits waives all matters in abatement not taken in a plea or an answer in abatement. Craig Silver Co. v. Smith, 163 Mass. 262, 39 N.E. 1116. The plaintiff in his declaration alleged all the facts essential to federal jurisdiction. The allegation of these facts, prima facie, was true. If the defendant had filed a plea in abatement or an answer in abatement, it would have been necessary to have averred therein that the plaintiff was a citizen of the commonwealth of Massachusetts, and under that plea the burden of proof would have fallen upon the defendant. Adams v. Shirk [C.C.A.] 117 F. 801, 805. Evidence, however, relating to the question of jurisdiction having been admitted at the trial, we think we should consider the case as though a plea in abatement or an answer in abatement raising the jurisdictional question had been filed. The burden of proof, however, still remains on the defendant on this issue." Mutual Life Ins. Co. v. Markowitz, 9 Cir., 78 F. 2d 396; Alabama Grocery Co. v. Hammond, 5 Cir., 285 F. 723.

The practice in Maine, in the matter of pleading above referred to by Judge Bingham, is substantially the same as in Massachusetts. Rev.St.1930, c. 96, §§ 36, 37; Littlefield v. Maine Cent. R. Co., 104 Me. 126, 71 A. 657; Chamberlain v. Lake, 36 Me. 388.

On the question of citizenship of the petitioner, certain written evidence was submitted and reserved for consideration, subject to the objections.

■ The petitioner, in support of its allegation of citizenship, submitted a formal

certificate, under the hand and seal of the director of insurance of the department of insurance of the state of Illinois, to the effect that the petitioner, Builders & Manufacturers Mutual Casualty Company, was an Illinois insurance corporation created under the laws of that state. That of course, if true, makes the petitioner a citizen of Illinois. The authenticity of this certificate was supported by a certificate from the secretary of state of the state of Illinois, under the hand of the secretary of state and the great seal of the State.

The respondents offered a letter written to one of their counsel in the case from a supervisor of the casualty division of the department of insurance of Illinois, evidently answering a previous inquiry, which letter was to the effect that parties identified with "Builders and Manufacturers Mutual Casualty Company, Chicago, Illinois" had organized another corporation, "the Builders and Manufacturers Casualty Company, a capital stock company," in which the mutual company had reinsured all of its outstanding business, the stock company assuming the obligations and acquiring the assets of the mutual company as of June 5, 1937.

It is obvious that not only does this letter fail to deny that the petitioner herein was an Illinois corporation, but it implies that it was such a corporation. No other evidence was offered.

In this situation it is apparent that the allegations in the petition as to the citizenship of the petitioner, which are prima facie true, have not only not been rebutted, but have been, to some extent, supported by the efforts of the respondents.

So far as the answers of the respondents are to be taken as a plea to the jurisdiction in respect of citizenship, they are overruled. The allegation that the petitioner is a corporation of Illinois stands as true.

Respondents also deny that there is here a controversy involving more than $3,000, as alleged in the petition.

In this connection it had better be considered also whether there is a "controversy" between the parties, as that is denied by the respondents.

■ The Declaratory Judgments Act gives the court authority to function only in cases of "actual controversy." U.S.C.A. tit. 28, § 400.

■ From the above findings of fact it appears that the insurance company made a contract with Josephine Grenier which would also inure to the benefit of her son if he used the insured car with her consent. The company claims that the policy was void. The Greniers claim that it was in full force for the specified term, and have demanded in writing that the company defend a suit against them as provided in the policy. At least one other suit may be brought, which would be in the same category with the first and which the company would be equally bound to defend, if the policy is valid.

Certainly here is a clean-cut controversy between the petitioner and the respondents Grenier.

It is also an "actual" controversy, because it deals with realities and not an imaginary set of facts. It involves a justiciable dispute concerning the rights of the parties in the very practical situation where one is demanding from the other substantial benefits, and possibly large money payments later on, which demands are being resisted.

So here is a "case of actual controversy" where, in the event that this court has jurisdiction otherwise, it is given "power upon petition * * * to declare rights and other legal relations of any interested party petitioning for such declaration." U.S.C.A. tit. 28, § 400.

The jurisdiction of the court to settle the controversy between the insurance company and the Greniers cannot be defeated by the attitude of the other parties who were joined as respondents. It was not a closed controversy. They could come into it if they desired. They were made parties because they were obviously interested in the question of the validity of the insurance policy. They have appeared and shown their interest and joined the controversy by violently opposing the petition. It was important for the petitioner to join them as parties, because if they should recover judgments against the Greniers, or either of them, based on the liability covered by the policy, they could, under the Maine statutes, proceed directly against the insurance company for payment of the judgments. There is clearly an actual controversy between all the parties to the petition.

■ As to the amount involved in the controversy, as affecting jurisdiction, the

criterion is not what Paquette or Turcotte may claim, but the maximum amount for which the petitioner may be liable under the policy. See Commercial Casualty Ins. Co. v. Humphrey, D.C., 13 F.Supp. 174, 178, and cases cited.

The company, under the contract of insurance, may be liable up to $5,000 or $10,000. The only statutory limit in Maine is $10,000 in case of death. The fact that the Maine courts, in certain individual cases, have held verdicts excessive is not pertinent. In other cases they have held verdicts inadequate. Each case stands upon its own merits.

The possible liability of the company here is more than $3,000, and, therefore, that jurisdictional condition is complied with.

It is further urged by respondents that the petitioner here is not a proper party because it has disposed of its assets and reinsured its obligations, and that the reinsurer is an indispensable party.

■ The only evidence of such asserted facts is the letter to counsel, above referred to, which was objected to and which is not admissible, and upon which it would be improper for the court to rest a finding of fact; but if the facts were as alleged, jurisdiction of this court would not be defeated. There is no claim that the petitioning corporation has been dissolved. It can sue and be sued. An insolvent condition of a corporation does not prevent its bringing suit.

A corporation which has insured the risks of the petitioner is not an indispensable party in this proceeding.

In Niles-Bement-Pond Co. v. Iron Moulders' Union, 254 U.S. 77, 41 S.Ct. 39, 41, 65 L.Ed. 145, the Supreme Court said that there was no prescribed formula for determining in every case whether a party is indispensable, but that the definition laid down in Shields v. Barrow, 17 How. 130, 139, 141, 15 L.Ed. 158, had been used to describe parties so indispensable that a court of equity would not proceed to a final decision without them, viz.: "Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience."

The court in the Shields Case referring to the statute and to the decisions of the court that the nonjoinder of a party who could not be served with process would not defeat the jurisdiction, said that the rule as to an indispensable party was "upon a much broader ground, which must equally apply to all courts of equity, * * * that no court can adjudicate directly upon a person's right, without the party being actually or constructively before the court."

Assuming that the petitioner here has reinsured his risks, this court is not asked to adjudicate directly upon any rights, of the reinsurer.

A reinsurer is interested in this case only because it may affect the amount it will have to pay under its agreement to pay all losses. Its rights remain as before, based upon its contract of reinsurance.

The respondents also contend that this court, in the exercise of its discretion, should not take jurisdiction of this case because the accident upon which the liability of the insurer might rest had already occurred before the bringing of this petition; and that the whole controversy can and should be settled in the state court where one suit already has been brought and is pending. Several cases are cited to support the proposition, phrased as follows in the headnote of one of them: "Court should refuse declaratory judgment involving judicial investigation of disputed facts which parties are entitled to have determined by jury, where facts are in issue in pending action wherein they will again be subject of judicial investigation between some or all of same parties, and declaratory judgment would result in inconvenience and possible injustice to party bringing pending action." U. S. Fidelity & Guaranty Co. v. Savoy Grill, 51 Ohio App. 504, 1 N.E.2d 946.

Respondents also rely upon the case of Western Casualty & Surety Co. v. Beverforden, D.C., 17 F.Supp. 928, 930, in which the court cites language in Gully v. Interstate Natural Gas Co., 5 Cir., 82 F.2d 145, "to the effect that a purpose of a declaratory judgment is to settle 'questions of the validity of the policy * * * likely to arise before the loss insured against occurs.'" And to the same general effect Associated Indemnity Corp. v. Manning, D.C., 16 F.Supp. 430.

■ There is an important distinction, however, to be noted between those cases

865

and this case. In the cases cited where the liability, if any, had already attached and jurisdiction was refused for that reason, the question of liability of the insurance company depended upon the existence or nonexistence of certain facts which could be determined by another court or in another proceeding where the parties had a right to a jury trial. The instant case is not whether facts existed which made the insurer liable, or which relieved him from liability, but whether there was any insurance policy in force. This proceeding is substantially the same as a bill in equity to cancel a written instrument. The issue is not whether the company, as an insurer, is liable, but whether it is an insurer.

In the Ohio case, in the application for a declaratory judgment, the insurance company asked the court to declare that the loss caused by the death of a person was not covered by the insurance policy because the deceased was in the employ of a certain person insured under the Workmen's Compensation Law.

In the case of Western Casualty & Surety Co. v. Beverforden, the suit was brought in the state court and judgment recovered against the operator of one of the insured's cars. The court said, "A factual issue will determine the liability of the petitioner. The only question will be whether Dorothy Sheldon was operating the automobile by permission of the assured."

In the case of Associated Indemnity Corp. v. Manning, where the liability if any had already attached, the question of fact upon whose business the driver of the car was engaged was determinative of the controversy, including the liability of the insurer.

No case has been called to my attention where the court declined to take jurisdiction of what is substantially a bill in equity to declare a policy void ab initio.

There are other cases where the courts have taken jurisdiction under the Declaratory Judgments Act, even where liability has attached. Ohio Cas. Ins. Co. v. Plummer, D.C., 13 F.Supp. 169; Commercial Cas. Ins. Co. v. Humphrey, D.C., 13 F. Supp. 174; Travelers Ins. Co. v. Young, D.C., 18 F.Supp: 450. See, also, Gully v. Interstate Natural Gas Co., 5 Cir., 82 F. 2d 145.

I can see no justification for refusing to take jurisdiction in a case where the company is seeking to have the policy declared void. It is particularly important in the present case that the rights of the insurance company be established, and it is also for the benefit of all parties to save litigation.

As the matter now stands, the insurance company is claiming its policy to be void. Other interested parties are claiming the contrary. It is possible that a suit may be brought at any time by the administrator of the other person killed in the accident of November 7th, against one or both of the Greniers who claim rights under the policy. Under its terms the insurer is bound to appear and defend that suit, whether groundless or not, and should do so if its policy is valid; but if it does so and takes charge of the suit it is estopped from afterward claiming the policy to be invalid. Colby v. Preferred Acc. Ins. Co., 134 Me. 18, 181 A. 13; Lunt v. Ætna Life Ins. Co., 261 Mass. 469, 159 N. E. 461.

The insurer is met with a serious dilemma. If it defends it is estopped. If it does not defend it takes the risk of the suit being inadequately defended, with excessive damages to pay in case it is found liable.

There is a claim made by respondents that petitioner is estopped from claiming that the cars were not owned by Mrs. Grenier, but I am unable to find facts upon which such an estoppel could be predicated.

Some time after the trial various additional motions to dismiss were filed, but none raising any questions not hereinabove discussed.

All motions to dismiss will be denied. The petitioner may have a declaratory judgment in accordance with this opinion.